[Cite as *State v. Durham*, 2013-Ohio-4764.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | CASE NO. CA2013-03-023 |
| Plaintiff-Appellee, | : | |
| | : | O P I N I O N |
| - vs - | : | 10/28/2013 |
| | : | |
| RICHARD KEITH DURHAM, | : | |
| Defendant-Appellant. | : | |

CRIMINAL APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
Case No. 12CR28815

David P. Fornshell, Warren County Prosecuting Attorney, Michael Greer, 500 Justice Drive, Lebanon, Ohio 45036, for plaintiff-appellee

Thomas G. Eagle Co., L.P.A., Thomas Eagle, 3386 North St. Rt. 123, Lebanon, Ohio 45036, for defendant-appellant

**S. POWELL, J.**

{¶ 1} Defendant-appellant, Richard K. Durham, appeals from his conviction and sentence he received in the Warren County Court of Common Pleas after a jury found him guilty of one count of possession of heroin and one count of possession of drug abuse instruments. For the reasons outlined below, we affirm in part, reverse in part and remand for further proceedings.

{¶ 2} On the afternoon of December 2, 2012, Sergeant Stanley A. Jordan, Jr. of the Ohio State Highway Patrol was dispatched to the rest areas located on I-71 near mile marker 34 in Turtlecreek Township, Warren County, Ohio, after a female reported she was a passenger in a semi-truck being driven by an individual, later identified as Durham, who was "whacked out on drugs." After arriving at the scene, the woman flagged down Sergeant Jordan as he pulled into the rest area located on northbound I-71. Trooper James Adams was also dispatched to the rest areas in order to provide assistance with the investigation into the woman's allegations.

{¶ 3} Upon making contact with the female passenger, who identified herself as Latisha Lane Ingram, Sergeant Jordan verified the woman's identity by checking her name and date of birth through his computer system. After Sergeant Jordan verified her identity, Ingram then informed him that she had been a passenger in Durham's semi-truck that was then parked alongside the entrance ramp to the rest area. Ingram also informed Sergeant Jordan that Durham had been shooting up heroin as they traveled north from Mississippi towards Buffalo, New York, and that he was currently asleep in the back of the vehicle's cabin.

{¶ 4} After speaking with Ingram, Sergeant Jordan and Trooper Adams approached the semi-truck identified by Ingram. At that time, the vehicle's passenger side door was standing wide open with the motor still running. Trooper Adams then conferred with Ingram to see if Durham had any weapons in the vehicle. In response, Ingram informed Trooper Adams that although she was not certain, she did not believe Durham had any weapons in the vehicle. Trooper Adams then stepped up into the vehicle through the open passenger door, announced himself as an officer with the Ohio State Highway Patrol, and asked Durham if he could step outside. Durham, who was lying on the bed in the rear of the cab, appeared agitated, foggy, and disheveled. Nevertheless, Durham agreed to exit the vehicle

and speak with the officers.

{¶ 5} Once he exited the vehicle, the officers asked Durham about Ingram's allegations regarding his recent narcotics use. Durham denied the allegations. However, after asking Durham to roll up his sleeves, the officers noticed fresh track marks on Durham's arm. Sergeant Jordan also discovered Durham's pupils did not react to the bright light of his flashlight. According to Sergeant Jordan, who had 13 years of experience as a drug interdiction officer, these were signs of Durham's recent narcotics use that corroborated Ingram's allegations. The record also reveals Durham openly admitted to the officers that he had a history of drug addiction and that he was prescribed medication to help curb his urge to use.

{¶ 6} After speaking with Durham, Sergeant Jordan again spoke with Ingram who indicated there were needles and heroin throughout Durham's semi-truck. Specifically, although not providing the officers with an exact location, Ingram told Sergeant Jordan that Durham would go through the side equipment boxes located on his semi-truck before shooting up. Ingram also informed Sergeant Jordan that Durham had injected her with heroin the day before. Ingram provided the officers with a written statement that contained these same basic allegations.

{¶ 7} After speaking with Ingram a second time, Trooper Adams escorted Durham to his police cruiser so that Sergeant Jordan could conduct a search of his semi-truck. The search of the vehicle ultimately uncovered several syringes, one of which still had a brownish liquid inside, as well as a small piece of paper that contained an off-white powder substance. Sergeant Jordan also located several additional unused syringes and two glass smoking pipes. Durham was then placed under arrest, advised of his *Miranda* warnings, and transported to the Warren County Jail. Test results later determined the brownish liquid and the off-white powder substance located in Durham's semi-truck was heroin.

{¶ 8} On January 7, 2013, the Warren County Grand Jury returned an indictment charging Durham with one count of possession of heroin in violation of R.C. 2925.11(A), a fifth-degree felony. The indictment also included one count of possessing drug abuse instruments in violation of R.C. 2925.12(A), which, due to Durham's previous conviction for cocaine possession, rose to a first-degree misdemeanor.

{¶ 9} Durham subsequently filed a motion to suppress arguing the statements he made to the officers should be suppressed and that the search of his semi-truck was not supported by probable cause. After holding a hearing on the matter, which included extensive testimony from both Sergeant Jordan and Trooper Adams, the trial court denied Durham's motion in its entirety. The following day, a jury found Durham guilty of both offenses. The trial court then sentenced Durham to serve the maximum total sentence of 12 months in jail.

{¶ 10} Durham now appeals from his conviction and sentence, raising two assignments of error for review.

{¶ 11} Assignment of Error No. 1:

{¶ 12} THE TRIAL COURT ERRED IN DENYING THE DEFENDANT'S MOTION TO SUPPRESS EVIDENCE.

{¶ 13} In his first assignment of error, Durham argues the trial court erred by denying his motion to suppress. In support of this claim, Durham does not dispute the officers had reasonable and articulable suspicion to investigate the allegations of illicit drug use received from Ingram, his female passenger, while his semi-truck was parked at the rest area. Instead, Durham merely argues the trial court erred in denying his motion to suppress as he should have been read his *Miranda* warnings before being questioned about his illegal drug use. Durham also argues that the search of his semi-truck was not supported by probable cause. Finding no merit to either of Durham's arguments, we affirm the trial court's decision.

- 4 -

**{¶ 14}** Appellate review of a ruling on a motion to suppress presents a mixed question of law and fact. *State v. Gray*, 12th Dist. Butler No. CA2011-09-176, 2012-Ohio-4769, ¶ 15, citing *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8. When considering a motion to suppress, the trial court, as the trier of fact, is in the best position to weigh the evidence in order to resolve factual questions and evaluate witness credibility. *State v. Eyer*, 12th Dist. Warren No. CA2007-06-071, 2008-Ohio-1193, ¶ 8. When reviewing the denial of a motion to suppress, a reviewing court is bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Oatis*, 12th Dist. Butler No. CA2005-03-074, 2005-Ohio-6038, ¶ 10. "An appellate court, however, independently reviews the trial court's legal conclusions based on those facts and determines, without deference to the trial court's decision, whether as a matter of law, the facts satisfy the appropriate legal standard." *State v. Thomas*, 12th Dist. Warren No. CA2012-10-096, 2013-Ohio-3411, ¶ 18, quoting *State v. Cochran*, 12th Dist. Preble No. CA2006-10-023, 2007-Ohio-3353, ¶ 12.

**{¶ 15}** It is well-established the "prosecution may not use statements, whether exculpatory or inculpatory, stemming from a custodial interrogation unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." *State v. Huysman*, 12th Dist. Warren No. CA2005-09-107, 2006-Ohio-2245, ¶ 13, quoting *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602 (1966). The issuance of *Miranda* warnings is only required when the police subject a person to custodial interrogation. *State v. Byrne*, 12th Dist. Butler Nos. CA2007-11-268 and CA2007-11-269, 2008-Ohio-4311, ¶ 10, citing *State v. Biros*, 78 Ohio St.3d 426, 440 (1997). "Encompassed in this definition are two distinct concepts: custody and interrogation." *State v. Staley*, 12th Dist. Madison No. CA99-08-019, 2000 WL 554512, *3 (May 8, 2000).

**{¶ 16}** An interrogation includes "express questioning as well as 'any words or actions

on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect.'" *State v. Strozier*, 172 Ohio App.3d 780, 2007-Ohio-4575, ¶ 20 (2d Dist.), quoting *Rhode Island v. Innis*, 446 U.S. 291, 301, 100 S.Ct. 1682 (1980). To that end, an interrogation, "as conceptualized in *Miranda*, must reflect a measure of compulsion above and beyond that inherent in custody itself" before it will be considered a custodial interrogation. *State v. Brumley*, 12th Dist. Butler No. CA2004-05-114, 2005-Ohio-5768, ¶ 10.

{¶ 17} In determining whether an individual was in custody, the court must examine the totality of the circumstances surrounding the interrogation. *State v. Coleman*, 12th Dist. Butler No. CA2001-10-241, 2002-Ohio-2068, ¶ 23. A person is in custody if he is formally placed under arrest prior to a police interrogation, or, if not formally arrested, when there is a significant restraint on his freedom of movement. *State v. Smith*, 12th Dist. Fayette No. CA2006-08-030, 2009-Ohio-197, ¶ 11. Such a determination "depends on the objective circumstances of the interrogation, not on the subjective views harbored by either the interrogating officers or the person being questioned." *State v. Henry*, 12th Dist. Preble No. CA2008-04-006, 2009-Ohio-434, ¶ 13; *Stansbury v. California*, 511 U.S. 318, 323-324, 114 S.Ct. 1526 (1994). However, a person is not in custody merely because he is considered a suspect. *Smith*, 2009-Ohio-197 at ¶ 12.

{¶ 18} In support of his claim the trial court erred by denying his motion to suppress, Durham initially argues the officers violated his constitutional rights by asking him to exit his semi-truck based solely the allegations of an "unknown and unnamed female." We fail to see how this relates to the issue of whether Durham was subject to a "custodial interrogation." Nevertheless, as noted above, the record indicates Sergeant Jordan was flagged down at the rest area located at mile marker 34 on northbound I-71 by a female matching the description provided by dispatch. The woman identified herself to Sergeant

Jordan who then verified her identity as Latisha Lane Ingram through his computer system. After verifying her identity, Ingram pointed to Durham's semi-truck and informed Sergeant Jordan that "the driver of the semi-truck, Mr. Durham, had been using narcotics, had been shooting up heroin as he was making their trip from the south and that he was now in the semi and that he was asleep in the semi." According to Sergeant Jordan, Ingram did not appear to be under the influence of drugs and was in a normal frame of mind at all times.

{¶ 19} Furthermore, when specifically asked why Durham was removed from his semi-truck, both Sergeant Jordan and Trooper Adams stated that he was asked to exit the vehicle for purposes of officer safety. As Sergeant Jordan testified on cross-examination during the suppression hearing:

> Q: So he came out and spoke to you?
>
> A: Yes.
>
> Q: You requested that he get out of the vehicle?
>
> A: [Yes.]
>
> Q: Did you do that for safety reasons, perhaps he could reach for a weapon or why did you request for him to –
>
> A: Well, we're standing on the ground and he's got the high ground and concealment on us, I mean we really don't want to speak to a person up in a tractor trailer like that.
>
> Q: Okay, so for safety reasons?
>
> A: Yes.

In addition, Trooper Adams testified:

> Q: And having him come out why did you have him come out of the truck?
>
> A: Because I have no idea of the, I mean the availability of weapons in that vehicle, I mean you could put anything you wanted in a tractor like that and for my own safety I wanted to remove him from the interior of that vehicle to make sure he didn't have access to any weapons.

**{¶ 20}** As can be seen, Durham's claim that he was removed from his semi-truck based solely on the "unknown and unnamed female" is nothing more than a mischaracterization of the record before this court. Yet, even then, the officers' request was proper and did not require Durham to be advised of his *Miranda* warnings. *See, e.g., State v. White*, 2d Dist. Montgomery No. 18731, 2002 WL 63294, *4 (suspect not in custody when asked to exit vehicle for purposes of officer safety to investigate suspicion of recent drug transaction); *State v. Welch*, 5th Dist. Ashland No. 2002COA004, 2002-Ohio-5956, ¶ 14 (suspect was not in custody when asked to exit vehicle for purposes of officer safety to investigate suspicions that marijuana was present in the vehicle). Durham's argument is therefore without merit and overruled.

**{¶ 21}** Next, Durham argues that advising him of his *Miranda* warnings was necessary because he was the subject of a custodial interrogation "as soon as the officer ordered him out [of his semi-truck] to answer questions of a crime." In support of this claim, Durham argues this case is similar to this court's decision in *State v. Huening*, 12th Dist. Butler No. CA94-01-017, 1994 WL 506218 (Sept. 19, 1994). According to Durham, this court's decision in *Huening* "resulted in the determination and affirmation of a *Miranda* violation," thereby requiring appellant's statements to be suppressed.

**{¶ 22}** However, contrary to Durham's claims otherwise, this court never addressed any issues regarding *Miranda* or what constitutes a "custodial interrogation" in *Huening*. In fact, this court's decision in *Huening* never once discusses any statements allegedly made by the appellant that were allegedly suppressed as Durham suggests. Rather, this court's decision in *Huening* merely addressed the trial court's decision to suppress intoxilyzer test results without first holding a hearing, as well as the trial court's decision finding appellant was not placed under arrest when detained within the police cruiser in contemplation of

charging her with a crime. *Id.* at *3. This court's decision in *Huening*, therefore, is clearly distinguishable from the case at bar.

{¶ 23} Regardless, even if we were to find this court's decision in *Huenig* applicable, which we do not, the record is devoid of any evidence that Durham's movement was in any way restrained in contemplation of charging him with a crime so as to be subject to a "custodial interrogation." *See State v. Armenta*, 12th Dist. Warren No. CA2002-04-044, 2002-Ohio-611, ¶ 17. Instead, we find the officers' questioning was merely a part of the investigation into the allegations received from Ingram regarding Durham's illegal drug use. It is well-established that "[c]onfining an individual to the police cruiser is not a custodial placement if it is part of the investigation, even if the suspect in the police cruiser is not free to leave." *State v. Popp*, 12th Dist. Butler No. CA2010-05-128, 2011-Ohio-791, ¶ 20, quoting *In re M.D.*, 12th Dist. Madison No. CA2003-12-038, 2004-Ohio-5904, ¶ 18. Moreover, "[g]eneral on-the-scene questioning as to facts surrounding a crime or other general questioning of citizens in the fact-finding process ordinarily does not fall within the ambit of custodial interrogation." *State v. Rivera-Carrillo*, 12th Dist. Butler No. CA2001-03-054, 2002 WL 371950, *3 (Mar. 11, 2002). That is exactly what occurred here. Durham's argument otherwise is likewise without merit and overruled.

{¶ 24} Finally, Durham argues he should have been advised of his *Miranda* rights because he made "incriminating and inculpatory statements" in response to the officers' routine questioning. However, as previously stated, such routine on-the-scene questioning does not constitute a "custodial interrogation" requiring the recitation of *Miranda* warnings. Furthermore, after reviewing the testimony provided at the suppression hearing, we find this information, which included testimony regarding Durham's admitted prior drug addiction and the obvious track marks on his arm, was willingly and voluntarily provided to the officers at the scene. As Trooper Adams testified:

Q:     And he showed you old track marks on his arm?

A:     Not when he was sitting in the car, no.  No, the looking at his arms took place up at the semi.

Q:     And he voluntarily showed them to you?

A:     Yes.

Trooper Adams also testified that Durham "showed it to me, he knew he had it," when defense counsel asked if Adams ever mentioned the recent track marks he observed to Durham during their conversation.

{¶ 25} It is well-established that a suspect who willingly volunteers information is not subject to a custodial interrogation and is not entitled to *Miranda* warnings.  *State v. McGuire*, 80 Ohio St.3d 390, 401 (1997), citing *State v. Roe*, 41 Ohio St.3d 18, 22 (1989).  In other words, "*Miranda* does not affect the admissibility of '[v]olunteered statements of any kind.'" *Id.*, quoting *Miranda*, 384 U.S. at 478; *State v. Cox*, 5th Dist. Coshocton No. 08 CA 0008, 2009-Ohio-1625, ¶ 21 ("[v]olunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by the Supreme Court's *Miranda* decision").

{¶ 26} Moreover, although Durham claimed as part of his oral argument before this court that the officers' request to roll up his sleeves constitutes an unlawful search under the Fourth Amendment, Durham did not raise this issue as part of his motion to suppress, nor did he argue this issue during the suppression hearing.  An accused who seeks the suppression of evidence must "raise the grounds upon which the validity of the search or seizure is challenged in such a manner as to give the prosecutor notice of the basis for the challenge." *State v. Preston*, 12th Dist. Clermont No. CA2012-05-036, 2012-Ohio-6176, ¶ 9, quoting *Xenia v. Wallace*, 37 Ohio St.3d 216 (1988), paragraph one of the syllabus.  Simply stated, "[i]f a motion is not filed raising a particular suppression issue, that issue is waived." *State v.*

*Mixner*, 12th Dist. Warren No. CA2001-07-074, 2002 WL 83742, *3 (Jan. 22, 2002).

**{¶ 27}** Nevertheless, even if this issue was not waived, we find Durham's willingness to voluntarily roll up his sleeves does not constitute an unlawful search under the Fourth Amendment. *See People v. Smith*, 141 Cal.App.2d 399, 401-402 (1956) (voluntarily rolling up shirt sleeves upon officers request that revealed eight fresh track marks was not an unlawful search); *see also Gardner v. Village of Grand River, Ohio*, 955 F.Supp. 817, 827 (N.D.Ohio 1997) (voluntarily rolling up sleeves and raising shirt to look for tattoos and scars upon officers request was not an unlawful search). "Exposure of the arms in public is a common practice for the vast majority of persons living in this country. To that vast majority there is no loss of dignity or significant intrusion into privacy in exposing the arms." *United States v. Murphree*, 497 F.2d 395, 396-397 (9th Cir.1974) (finding border inspectors may require persons entering the United States to roll up their sleeves even though the inspectors do not have real suspicion of smuggling directed to the individual).

**{¶ 28}** Furthermore, as it relates to the questioning by Trooper Adams after Durham was escorted to the police cruiser, Trooper Adams testified as follows:

> Q: So when you had him sitting in the back of the car you weren't trying to get him to admit the fact that he was in possession of heroin?
>
> A: Not that I recall, no.
>
> Q: Okay.
>
> A: No. No, I was more or less just talking to him about, you know, what he's doing, where he's going, where he's coming from.
>
> Q: Okay.
>
> A: I looked at his log books, things of that nature. Pretty much the same way I handle any contact with a commercial operator really.

Thereafter, when asked if he was interrogating Durham during this time, Trooper Adams

testified:

> No, I was basically just getting information, like I said like information on the load he had, where he was coming from, where he was taking it to, you know. I may have asked him for contact information like the company he was driving for and things like that.

{¶ 29} Based on the facts and circumstances of this case, we find this falls short of what constitutes a "custodial interrogation" as contemplated under *Miranda*. *See, e.g., State v. Thompson*, 103 Ohio App.3d 498, 502-503 (12th Dist.1995) (finding suspect not entitled to *Miranda* warnings, despite police officers' verbal indications that he was not under arrest, where officers told him they knew about drugs and wanted his cooperation, that they did not want to have to take him to jail, and that he was subjected to search and his car keys and cash were seized). Instead, the officers' questioning was merely part of the routine investigation into the allegations of Durham's illegal drug use obtained from Ingram, his female passenger. Therefore, because Durham was not subject to a "custodial interrogation," the trial court did not err in denying his motion to suppress in regards to any statements he may have made to the officers.

{¶ 30} Next, Durham argues the trial court erred in denying his motion to suppress because the search of his semi-truck was not supported by probable cause. Specifically, Durham claims the officers had "insufficient evidence" to justify the search as it was based on conclusory allegations from Ingram and their own observations after Durham exited from his semi-truck. This argument lacks merit.

{¶ 31} The Fourth Amendment to the United States Constitution and Section 14, Article I of the Ohio Constitution protect individuals from unreasonable searches and seizures. *State v. Dennis*, 12th Dist. Warren No. CA2012-01-004, 2012-Ohio-4877, ¶ 13; *State v. Moore*, 90 Ohio St.3d 47, 49 (2000). Searches and seizures conducted without a warrant are per se unreasonable unless they come within one of the few specifically

established and well delineated exceptions. *State v. Fisher*, 10th Dist. Franklin No. 10AP-746, 2011-Ohio-2488, ¶ 17. One such exception is the well-established automobile exception to the warrant requirement. *State v. Young*, 12th Dist. Warren No. CA2011-06-066, 2012-Ohio-3131, ¶ 34; *State v. Jones*, 9th Dist. Lorain No. 12CA010270, 2013-Ohio-2375, ¶ 9.

{¶ 32} "[U]nder the automobile exception to the warrant requirement, the police may search a motor vehicle without a warrant if they have probable cause to believe that the vehicle contains contraband." *State v. Battle*, 10th Dist. Franklin No. 10AP-1132, 2011-Ohio-6661, ¶ 33. As it relates specifically to an automobile search, probable cause is "a belief reasonably arising out of circumstances known to the seizing officer, that an automobile or other vehicle contains that which by law is subject to seizure and destruction." *State v. Popp*, 12th Dist. Butler No. CA2010-05-128, 2011-Ohio-791, ¶ 27, quoting *State v. Kessler*, 53 Ohio St.2d 204, 208 (1978). The determination of probable cause is fact-dependent and turns on what the officers knew at the time they conducted the search. *Battle* at ¶ 34, citing *Bowling Green v. Godwin*, 110 Ohio St.3d 58, 2006-Ohio-3563, ¶ 14.

{¶ 33} In this case, and as noted above, the officers were dispatched to the rest areas on I-71 near mile marker 34 after a female reported she was a passenger in a semi-truck that was being driven by an individual, later identified as Durham, who was "whacked out on drugs." Once they arrived at the scene, Ingram, a passenger in Durham's semi-truck, provided a detailed account of Durham's drug use during their travels north from Mississippi towards Buffalo, New York. This included Ingram's own admission that Durham had shot her up with heroin the previous day.

{¶ 34} The officers then made contact with Durham and discovered fresh track marks on his arm indicating his recent drug use. As Sergeant Jordan testified:

Q: Starting with the track marks you said you had training

and experience in the detection of those?

A:      Yes, and experience.

Q:      Based on your training and experience did you believe those were recent marks?

A:      Absolutely.

Q:      And what did those marks look like?

A:      The one in particular that looked like it was recent it was a raised area that was red, kind of look[ed like] a pustule looking injection site.

{¶ 35} Trooper Adams also testified regarding his observations of the fresh track marks on Durham's arm. As Trooper Adams testified during cross-examination:

Q:      And did they look kind of purplish?

A:      One looked pinky or raised or, one did, I can't remember which arm it was on.

Q:      He had a couple of marks, didn't he, he had one on the arm there?

A:      Yes, he had several. One stood out at looking relatively f[r]esh, kind of irritated I guess you would call it.

{¶ 36} Sergeant Jordan also testified Durham's pupils did not adjust to the light when checking his pupils with his flashlight. According to Sergeant Jordan, who had 13 years of experience as a drug interdiction officer, this indicated recent narcotics usage. After speaking with Durham, the officers once again spoke with Ingram who informed them that there were needles and heroin scattered throughout the vehicle. During this time, Ingram stated Durham would usually get out of the vehicle and go through the side equipment boxes before shooting up. The record also reveals Durham admitted to the officers that he had a history of drug addiction and that he was prescribed medication to help control his urge to use.

{¶ 37} After a thorough review of the record, we find the officers had probable cause

to search Durham's semi-truck. In so holding, we find the facts here are more than sufficient to provide the officers with reason to believe contraband would be located within the vehicle. This includes not only Ingram's statements, but also the officers own observations corroborating her allegations. Ingram's allegations were not merely "innocuous details" as Durham now suggests, but rather, a detailed account of Durham's drug usage and the location that the drugs would likely be found. Because the search of Durham's semi-truck was supported by probable cause, the trial court did not err in denying his motion to suppress in regards to the search of his vehicle. Therefore, finding no merit to either of Durham's claims, Durham's first assignment of error is overruled.

{¶ 38} Assignment of Error No. 2:

{¶ 39} THE TRIAL COURT ERRED IN SENTENCING THE DEFENDANT TO THE MAXIMUM PRISON SENTENCE FOR A FIFTH DEGREE FELONY AND FINANCIAL SANCTIONS.

{¶ 40} In his second assignment of error, Durham initially argues the trial court erred in sentencing him to serve the maximum total sentence of 12 months in jail resulting from his possession of heroin and possession of drug abuse instruments convictions. We disagree.

{¶ 41} As we recently stated in *State v. Crawford*, 12th Dist. Clermont No. CA2012-12-088, 2013-Ohio-3315, "the standard of review set forth in R.C. 2953.08(G)(2) shall govern all felony sentences." *Id.* at ¶ 6, quoting *State v. A.H.*, 8th Dist. Cuyahoga No. 98622, 2013-Ohio-2525, ¶ 7; *see also State v. Cochran*, 10th Dist. Franklin No. 11 AP-408, 2012-Ohio-5899, ¶ 52. Pursuant to R.C. 2953.08(G)(2), when hearing an appeal of a trial court's felony sentencing decision, such as the case here, "[t]he appellate court may increase, reduce, or otherwise modify a sentence that is appealed under this section or may vacate the sentence and remand the matter to the sentencing court for resentencing." However, as explicitly stated in R.C. 2953.08(G)(2), "[t]he appellate court's standard for review is not whether the

sentencing court abused its discretion."

{¶ 42} Rather, the appellate court may take any action authorized under R.C. 2953.08(G)(2) only if the court "clearly and convincingly finds" that either: (1) "the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revised Code, whichever, if any, is relevant;" or (2) "[t]hat the sentence is otherwise contrary to law." A sentence is not clearly and convincingly contrary to law where the trial court considers the purposes and principles of R.C. 2929.11, as well as the factors listed in R.C. 2929.12, properly applies postrelease control, and sentences appellant within the permissible statutory range. *State v. Pearce*, 12th Dist. Clermont No. CA2013-01-001, 2013-Ohio-3484, ¶ 25; *State v. Elliott*, 12th Dist. Clermont No. CA2009-03-020, 2009-Ohio-5926, ¶ 10.

{¶ 43} In making such a determination, it is "important to understand that the clear and convincing standard used by R.C. 2953.08(G)(2) is written in the negative." *State v. Lee*, 12th Dist. Butler No. CA2012-09-182, 2013-Ohio-3404, ¶ 9; *State v. Venes*, 8th Dist. Cuyahoga No. 98682, 2013-Ohio-1891, ¶ 21. "It does not say that the trial judge must have clear and convincing evidence to support its findings." *Id.* Quite the contrary, "it is the court of appeals that must clearly and convincingly find that the record does not support the court's findings." *Id.* Simply stated, the language in R.C. 2953.08(G)(2) establishes an "extremely deferential standard of review" for "the restriction is on the appellate court, not the trial judge." *Id.*

{¶ 44} Durham does not argue that his sentence was clearly and convincingly contrary to law, nor does he argue any errors in regard to the imposition of postrelease control. Instead, Durham argues the trial court's decision amounts to an abuse of discretion as it was the maximum total sentence allowable "for mere possession of a controlled substance." However, as noted above, the Generally Assembly has explicitly stated through the passage

of R.C. 2953.08(G)(2) that this court's standard for review "is not whether the sentencing court abused its discretion." In turn, we are not entitled to review the trial court's decision under the more lenient abuse of discretion standard. *Crawford*, 2013-Ohio-3315 at ¶ 17; *Pearce*, 2013-Ohio-3484 at ¶ 27. Nevertheless, in the interest of justice and fairness, we will review the trial court's sentencing decision in accordance with the applicable standard as provided by R.C. 2953.08(G)(2).

{¶ 45} After a thorough review of the record, we find no error in the trial court's sentencing decision. In making its sentencing decision, it is clear the trial court considered all of the relevant seriousness and recidivism factors set forth in R.C. 2929.11 and R.C. 2929.12. *See State v. Olvera*, 12th Dist. Butler No. CA2012-10-199, 2013-Ohio-3992, ¶ 13. The trial court also included this within its sentencing entry. *See State v. Lee*, 12th Dist. Butler No. CA2012-09-182, 2013-Ohio-3404, ¶ 11. Moreover, Durham's sentence was within the statutory range. *See State v. Dehner*, 12th Dist. Clermont No. CA2012-12-090, 2013-Ohio-3576, ¶ 34; *State v. Warren*, 12th Dist. Clermont No. CA2012-12-087, 2013-Ohio-3483, ¶ 9. The trial court's sentencing decision was based upon full consideration of the sentencing guidelines and the facts and circumstances of this case. This included evidence indicating Durham was operating his semi-truck while under the influence of heroin. Therefore, because the trial court's sentencing decision was supported by the record and otherwise not contrary to law, Durham's first argument is overruled.

{¶ 46} Durham also argues the trial court erred in ordering him to pay the costs of his prosecution, as well as the fees and expenses of his court-appointed attorney, without first determining his ability to pay.

{¶ 47} As it relates to the trial court's decision ordering Durham to pay the costs of his prosecution, pursuant to R.C. 2947.23(A)(1)(a), "[i]n all criminal cases, including violations of ordinances, the judge or magistrate shall include in the sentence the costs of prosecution * *

\* and render a judgment against the defendant for such costs." The imposition of prosecution costs is statutorily mandated. *State v. King*, 6th Dist. Lucas No. L-12-1013, 2013-Ohio-1265, ¶ 38. This is true even for those who are indigent. *State v. Veal*, 2d Dist. Montgomery No. 25253, 2013-Ohio-1577, ¶ 3, citing *State v. White*, 103 Ohio St.3d 580, 2004-Ohio-5989, ¶ 8; *State v. Thompson*, 3d Dist. Marion No. 9-13-04, 2013-Ohio-3200, ¶ 14. In turn, "a trial court need not consider a defendant's ability to pay court costs." *State v. Huddleston*, 10th Dist. Franklin No. 12AP-512, 2013-Ohio-2561, ¶ 7, quoting *Columbus v. Kiner*, 10th Dist. Franklin No. 11AP-543, 2011-Ohio-6462, ¶ 3. Therefore, the trial court did not err in ordering Durham to pay the costs of his prosecution. *See State v. Smith*, 12th Dist. Warren No. CA2010-06-057, 2011-Ohio-1188, ¶ 38, *reversed on other grounds*, *State v. Smith*, 131 Ohio St.3d 297, 2012-Ohio-781.

**{¶ 48}** However, as it relates to the trial court's decision ordering Durham to pay the fees and expenses of his court-appointed attorney, the state concedes the trial court erred by failing to ascertain Durham's ability to pay these costs. The payment of court-appointed counsel is governed by R.C. 2941.51(D), which provides:

> The fees and expenses approved by the court under this section shall not be taxed as part of the costs and shall be paid by the county. However, if the person represented has, or reasonably may be expected to have, the means to meet some part of the cost of the services rendered to the person, the person shall pay the county an amount that the person reasonably can be expected to pay.

**{¶ 49}** In interpreting R.C. 2941.51(D), this court has held the trial court must "make an affirmative determination on the record that the accused has the ability to pay or may reasonably be expected to have the ability to pay." *State v. Perry*, 12th Dist. Preble No. CA2004-11-016, 2005-Ohio-6041, ¶ 21. Thus, "an indigent defendant may properly be required to pay his attorney fees only after the court makes an affirmative determination on the record that the defendant has, or reasonably may be expected to have, the means to pay

- 18 -

all or some part of the cost of the legal services rendered to him." *State v. Cooper*, 147 Ohio App.3d 116, 2002-Ohio-617, ¶ 71 (12th Dist.); *State v. McGee*, 7th Dist. Jefferson No. 02-JE-39, 2003-Ohio-2239, ¶ 8.

{¶ 50} In this case, however, the trial court did not make any findings on the record in regards to Durham's present or future ability to pay the costs associated with his court-appointed counsel. There is also no information contained in the presentence investigation report or any other portion of the record regarding appellant's ability to pay. *See State v. Hall*, 12th Dist. Warren No. CA2011-05-043, 2011-Ohio-5748, ¶ 9; *State v. Layne*, 12th Dist. Clermont No. CA2010-09-073, 2011-Ohio-3763, ¶ 50-55; *see also State v. Bailey*, 12th Dist. Butler No. CA2002-03-057, 2003-Ohio-5280, ¶ 27. Because the state concedes this error, the portion of Durham's sentence ordering him to pay the cost of his court-appointed counsel is reversed and the matter remanded for a determination pursuant to R.C. 2941.51(D) regarding appellant's ability to pay that cost. *State v. Black*, 12th Dist. Butler No. CA2002-04-082, 2003-Ohio-2115, ¶ 18; *State v. Robinson*, 12th Dist. Butler No. CA2002-05-127, 2003-Ohio-2009, ¶ 26. Therefore, as it relates to the trial court's decision requiring Durham to pay the costs of his court-appointed counsel only, Durham's second assignment of error is sustained.

{¶ 51} Judgment affirmed in part, reversed in part, and remanded for further proceedings.

HENDRICKSON, P.J., and RINGLAND, J., concur.