[Cite as *State v. Dean*, 2014-Ohio-448.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

FAYETTE COUNTY


| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | CASE NO.  CA2013-03-007 |
| | : | O P I N I O N |
| - vs - | | 2/10/2014 |
| | : | |
| CONNIE DEAN, | : | |
| Defendant-Appellant. | : | |


CRIMINAL APPEAL FROM FAYETTE COUNTY COURT OF COMMON PLEAS
Case No. 12CRI00173


Jess C. Weade, Fayette County Prosecuting Attorney, James B. Roach, 110 East Court Street, Washington C.H., Ohio 43160, for plaintiff-appellee

Danielle Sollars-Creamer, 4222 Washington-Waterloo Road N.E., Washington C.H., Ohio 43160, for defendant-appellant


**HENDRICKSON, P.J.**

{¶ 1} Defendant-appellant, Connie Dean, appeals from a decision of the Fayette County Court of Common Pleas denying her motion to suppress. For the reasons that follow, we affirm the decision of the trial court.

{¶ 2} On April 25, 2012, officers from the Washington Court House Police Department and deputies from the Fayette County Sheriff's Office went to the address of

Glenn Pendergraft. They had been informed that Pendergraft and Dean shared the residence as boyfriend and girlfriend. The officers possessed warrants for both Pendergraft and Dean on menacing charges. Upon arriving, the officers requested that Pendergraft and Dean step outside. The officers informed Pendergraft and Dean that they were under arrest and placed Pendergraft in handcuffs. Before handcuffs were put on Dean, she asked if she could retrieve her shoes and also secure the residence. Washington Court House Officer Jean Boone informed Dean that an officer must accompany her into the residence due to department policy and concerns for officer safety. Dean agreed to Officer Boone accompanying her and led Officer Boone into the residence. Once inside, Officer Boone observed drug paraphernalia, specifically a grinder and pipe, and what Officer Boone believed to be a marijuana cigarette.

{¶ 3} When Officer Chancey Scott arrived on the scene, he initially remained with a handcuffed Pendergraft outside. However, after entering the residence, he observed the drug-related items in plain view and asked Dean if there was "any more." Dean responded affirmatively. When asked where, Dean motioned towards and then led Officer Scott to a bedroom. Dean then granted Officer Scott permission to enter the bedroom. When Officer Scott opened the door to the bedroom, he discovered approximately 20 marijuana plants. At this point, no one had given Dean or Pendergraft *Miranda* warnings.

{¶ 4} On November 21, 2012, Dean filed a motion to suppress alleging that the officers violated both the Fourth Amendment and the Fifth Amendment to the United States Constitution. As a result, Dean argued that all evidence obtained from her residence by the officers and statements made by her without the benefit of *Miranda* warnings should be suppressed. The trial court overruled Dean's motion to suppress regarding the physical evidence obtained but sustained the motion concerning statements made by Dean without the benefit of *Miranda* warnings after the discovery of the marijuana plants. Following the

trial court's partial overruling of Dean's motion to suppress, Dean pleaded no contest to illegal cultivation of marijuana and possession of drug paraphernalia. The trial court sentenced Dean to two years of community control with a reserved sentence of 12 months in a correctional institution if she violates the terms of community control.

{¶ 5} Dean now appeals, asserting as her sole assignment of error the following:

{¶ 6} THE TRIAL COURT ERRED IN NOT GRANTING [DEAN'S] MOTION TO SUPPRESS EVIDENCE FOUND IN THE BEDROOM AS FRUIT OF THE POISONOUS TREE FROM AN UNLAWFUL SEARCH.

{¶ 7} On appeal, Dean asserts that an unreasonable warrantless search was performed by the officers in violation of the Fourth Amendment to the United States Constitution because no exception to the warrant requirement existed in this case. Specifically, Dean argues that any consent given by Dean to search the bedroom was not voluntary because she was not given warnings under *Miranda* and was unaware that refusing to consent to the search was an option. Dean thus asserts that the evidence found in the bedroom should have been suppressed because it was "fruit of the poisonous tree."

{¶ 8} Appellate review of a ruling on a motion to suppress presents a mixed question of law and fact. *State v. Preston*, 12th Dist. Clermont No. CA2012-05-036, 2012-Ohio-6176, ¶ 15. When considering a motion to suppress, the trial court, as the trier of fact, is in the best position to weigh the evidence in order to resolve factual questions and evaluate witness credibility. *Id.* The appellate court must accept the trial court's findings of fact so long as they are supported by competent, credible evidence. *Id.*, citing *State v. Jimenez*, 12th Dist. Warren No. CA2011-09-103, 2012-Ohio-3318, ¶ 8. After accepting the trial court's factual findings as true, the appellate court must then determine, as a matter of law, and without deferring to the trial court's conclusions, whether the trial court applied the appropriate legal standard. *Jimenez* at ¶ 8, citing *State v. Forbes*, 12th Dist. Preble No. CA2007-01-001,

2007-Ohio-6412, ¶ 29.

{¶ 9} The foundation of Dean's argument regarding whether her consent to search was voluntary rests in the Fourth Amendment and Article I, Section 14 of the Ohio Constitution. However, the extension of Dean's argument that the evidence should have been suppressed due to a failure of the officers to give Dean her *Miranda* warnings falls squarely within the Fifth Amendment and Article I, Section 10 of the Ohio Constitution. As such, we first analyze Dean's argument under the Fourth Amendment and then analyze Dean's argument under the Fifth Amendment.

{¶ 10} The Fourth Amendment guarantees that "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated * * *." A search is not unreasonable according to the Fourth Amendment, as well as Article I, Section 14 of the Ohio Constitution, if it is based on a search warrant that is supported by probable cause. However, an exception to the warrant requirement exists when a person waives his Fourth Amendment protection by consenting to a warrantless search. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 93 S.Ct. 2041 (1973).

{¶ 11} "The Fourth Amendment test for a valid consent to search is that the consent be voluntary, and '[v]oluntariness is a question of fact to be determined from all the circumstances.'" *Ohio v. Robinette*, 519 U.S. 33, 40, 117 S.Ct. 417 (1996), citing *Schneckloth* at 248-249; *State v. Oberding*, 12th Dist. Warren No. CA2011-09-101, 2012-Ohio-3047, ¶ 14. A warrantless search based upon a suspect's consent while not in custody is valid if the "consent was in fact voluntarily given, and not the result of duress or coercion, express or implied." *Schneckloth* at 248. This principle has been extended to in-custody cases. *See United States v. Watson*, 423 U.S. 411, 424-425, 96 S.Ct. 820 (1976) (finding that custody is only a factor to be considered under the totality of the circumstances); *see also State v. Christopher*, 12th Dist. Clermont No. CA2009-08-041, 2010-Ohio-1816. The

state has the burden of proving by clear and convincing evidence that a person's consent was voluntarily given. *Christopher* at ¶ 43, citing *Florida v. Royer*, 460 U.S. 491, 497, 103 S.Ct. 1319 (1983).

{¶ 12} "In *Schneckloth*, the United States Supreme Court set forth several factors that a trial court must consider in determining whether a consent was voluntary." *Christopher* at ¶ 45. They include (1) the suspect's custodial status and the length of the initial detention, (2) whether the consent was given in public or at a police station, (3) the presence of threats, promises, or coercive police procedures, (4) the words and conduct of the suspect, (5) the extent and level of the suspect's cooperation with the police, (6) the suspect's awareness of his right to refuse to consent and his status as a "newcomer to the law," and (7) the suspect's education and intelligence. *Id.*

{¶ 13} "The weight of authority holds that prior *Miranda* warnings are not required to validate consent searches, even when the consent is obtained after the defendant is effectively in custody." *State v. Clelland*, 83 Ohio App.3d 474, 481 (4th Dist.1992). *See State v. Reyes*, 12th Dist. Preble No. CA2004-05-007, 2005-Ohio-2113. "While the test in consent cases relates to surrounding circumstances of which awareness of the right to refuse consent is a factor, * * * the *absence* of Miranda warnings [is] not dispositive of the voluntariness of the consent issue." (Emphasis sic.) *Reyes* at ¶ 22.

{¶ 14} In applying the voluntary consent factors set forth in *Schneckloth*, we find that (1) Dean was in custody on an unrelated warrant and, although the record is silent as to the length of the detention, it appeared to be reasonable and not drawn out; (2) Dean gave her consent at her residence; (3) there were no words or actions on the part of the officers that could be construed as intimidation, force, or pressure to coerce Dean to respond; (4) Dean's words and conduct reveal that she was the one who *asked* whether she could reenter the home to retrieve her shoes and secure the residence and, even though she *knew* she would

be accompanied by a police officer and that drug paraphernalia was in plain view in the entry room and a marijuana grow operation was located in one of the bedrooms, she told the officer "fine" and proceeded to go back into the home; (5) Dean was described by Officer Scott and other officers as being overly "cooperative" and "willing to talk," as shown by her responses to questions and her willingness to lead Officer Scott to the bedroom; (6) while there was no evidence that Dean was aware of her right to refuse consent, it appears from her outstanding warrant that Dean has had some prior experience with the law; and (7) while there was no evidence expressly detailing Dean's education and intelligence, it appears that she possessed adequate intelligence to understand the circumstances as they occurred.

{¶ 15} Considering the weight of the factors, the trial court found Dean's consent voluntary. Whether consent is voluntary is a question of fact best determined by the trial court. After reviewing the totality of the circumstances, we agree that Dean's consent was voluntary. Furthermore, because the absence of *Miranda* warnings is not dispositive of the consent issue, there was no violation of Dean's Fourth Amendment rights. Consequently, the marijuana plants discovered after Dean gave her consent to the officers to enter the residence and search the bedroom need not be suppressed under the basis of the Fourth Amendment.

{¶ 16} With respect to her Fifth Amendment claims, Dean argues that the marijuana plants should have been suppressed because she was not given *Miranda* warnings. There is no dispute that Dean was not given *Miranda* warnings prior to being questioned by Officer Scott. However, the state argues that *Miranda* warnings need not have been given to Dean because she was not subject to custodial interrogation. The state asserts that Dean was not subject to custodial interrogation because there is no reason Officer Scott should have known that his question would likely elicit an incriminating response. Furthermore, the state contends that even if Officer Scott should have known that his question would likely elicit an

incriminating response, *Miranda* warnings were unnecessary because Officer Scott's inquiry did not relate to menacing, the crime for which Dean was in custody. However, whether Dean was subject to custodial interrogation rendering *Miranda* warnings mandatory is not dispositive of whether the marijuana plants should have been suppressed.

{¶ 17} In *United States v. Patane*, 542 U.S. 630, 124 S.Ct. 2620 (2004), the United States Supreme Court had held that "the *Miranda* rule protects against violations of the Fifth Amendment's Self-Incrimination Clause, but does not apply to nontestimonial physical evidence." *State v. Farris*, 109 Ohio St.3d 519, 2006-Ohio-3255, ¶ 37.[1] The Ohio State Supreme Court determined that Article I, Section 10 of the Ohio Constitution provides greater protection to criminal defendants than the Fifth Amendment to the United States Constitution in *Farris*. *Id.* at ¶ 48. In *Farris*, the Ohio Supreme Court held that the protections afforded by Article I, Section 10 of the Ohio Constitution against self-incrimination extend to physical

---

1.    {¶ a} In *Patane*, defendant was suspected of violating a restraining order and possibly being in possession of a firearm. *Id.* at 635. After officers arrested defendant for a violation of a restraining order, an officer began to advise defendant of his *Miranda* warnings, but was interrupted and defendant was never actually given his *Miranda* warnings. *Id.* Subsequently, the officer asked defendant about a handgun. *Id.* Defendant told the officer that the handgun was in his bedroom and gave the officer permission to retrieve the handgun. *Id.* The United States Supreme Court stated:

> {¶ b} [J]ust as the Self-Incrimination Clause primarily focuses on the criminal trial, so too does the *Miranda* rule. The *Miranda* rule is not a code of police conduct, and police do not violate the Constitution (or even the *Miranda* rule, for that matter) by mere failures to warn. For this reason, the exclusionary rule articulated in such cases as *Wong Sun* [*v. United States* (1963), 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441], which established the 'fruit of the poisonous tree' doctrine does not apply.

{¶ c} *Id.* at 637.

   {¶ d} Furthermore, the United States Supreme Court stated:

> {¶ e} It follows that police do not violate a suspect's constitutional rights (or the *Miranda* rule) by negligent or even deliberate failures to provide the suspect with the full panoply of warnings prescribed by *Miranda.* Potential violations occur, if at all, only upon the admission of unwarned statements into evidence at trial. And, at that point, "[t]he exclusion of unwarned statements is a complete and sufficient remedy" for any perceived *Miranda* violation. *Chavez* [*v. Martinez*, 538 U.S. 760, 790, 123 S.Ct. 1994 (2003)].

{¶ f} *Id.* at 641-642.

evidence seized as a result of pre-*Miranda* statements. *Id.* However, "[o]nly evidence obtained as the direct result of statements made in custody without the benefit of a *Miranda* warning should be excluded." *Id.*

{¶ 18} In *Farris*, after being pulled over, defendant was placed in the front seat of the cruiser. *Id.* at ¶ 3. The officer told defendant that he had smelled marijuana in the vehicle and asked about the smell of marijuana without giving defendant *Miranda* warnings or asking for consent to search the car. *Id.* Defendant stated that his housemates had been smoking. *Id.* In response, the officer *told* defendant that he was going to search the car. *Id.* Then, the officer specifically asked defendant whether there were any drugs or drug devices in the car. *Id.* Defendant responded that there was a "bowl" in a bag located in the trunk. *Id.* The Ohio Supreme Court held that the discovery of the bowl was a direct result of a *Miranda* violation and thus should have been suppressed. *Id.* at ¶ 49.

{¶ 19} This case presents a situation markedly different from that in *Farris.* In *Farris* a warrantless, nonconsensual search was conducted based upon a pre-*Miranda* testimonial statement that there were drugs in the vehicle's trunk given by an "in custody" defendant. Because the search of the vehicle was nonconsensual, the exception of voluntary consent to the general Fourth Amendment prohibition against unreasonable searches and seizures did not apply. In contrast, as discussed above, Dean voluntarily gave her consent to Officer Scott to search the bedroom. Prior to giving her consent, and upon seeing drug paraphilia in plain sight, the officer asked Dean whether there was "any more."[2] Dean then led the officer to the bedroom where the officer asked, and was granted, permission to enter. Dean thus consented to the search of the bedroom where the marijuana plants were found. Unlike

---

2. On appeal, Dean does not argue that any statements she made should have been suppressed. Rather, Dean argues that evidence found in the bedroom should have been suppressed. Because we find the marijuana plants found in the bedroom admissible due to Dean's voluntary consent to search, any error in the admission of Dean's statements is harmless. Crim.R. 52(A).

*Farris*, Dean's consent to search is nontestimonial and is, therefore, not subject to *Miranda*.

{¶ 20} Furthermore, in *Oregon v. Elstad*, 470 U.S. 298, 105 S.Ct. 1285 (1985), the United States Supreme Court held that an arrestee's voluntary pre-*Miranda* incriminating statements did not invalidate subsequent incriminating statements made after the arrestee waived his *Miranda* rights. In doing so the Supreme Court observed, "This Court has never held that the psychological impact of voluntary disclosure of a guilty secret qualifies as state compulsion or compromises the voluntariness of a subsequent informed waiver." *Elstad* at 312. Although *Elstad* dealt with the efficacy of a *Miranda* waiver subsequent to a prior *Miranda* violation, there is no reason why the same logic ought not apply here, to a Fourth Amendment waiver subsequent to a prior alleged *Miranda* violation.

{¶ 21} Though Dean claims that her consent to search was not voluntary and that her unwarned responses to Officer Scott's questions violated *Miranda*, she does not claim that her responses to Officer Scott's questions were not voluntary. On the contrary, Dean all but admits in her brief that her responses were voluntary ("the questioning was not coercive and [Dean] did not seem to be under duress"). The record reflects that, though Dean was not advised of her *Miranda* rights, her statements and consent were nonetheless, voluntary. Thus, Dean's voluntary consent to search, consistent with *Elstad* and *Farris*, severed the connection between any alleged *Miranda* violation and the subsequent search and seizure of the marijuana plants. Consequently, the evidence was not obtained as a direct result of any statements made in custody without regard to whether the statements were the product of a *Miranda* violation.

{¶ 22} Accordingly, the trial court did not err in denying Dean's motion to suppress evidence found in the bedroom as fruit of the poisonous tree from an unlawful search. Dean's sole assignment of error is overruled.

{¶ 23} Judgment affirmed.

M. POWELL, J., concurs.

PIPER, J., concurs separately.

**PIPER, J., concurring separately.**

{¶ 25} In making its determination, the majority attempts to distinguish the Ohio Supreme Court case of *Farris* from the law applicable herein. In *Farris*, the Ohio Supreme Court extended the protection against self-incrimination found under Article 1, Section 10 of the Ohio Constitution to physical evidence seized as a direct result of statements made by criminal defendants prior to receiving *Miranda* warnings. We are obligated to follow the precedent set forth by the Ohio Supreme Court in *Farris*.

{¶ 26} The questioning by Officer Scott directly led to the discovery of the marijuana plants. Without Officer Scott's questions as to whether there was "any more?" and "where?," Dean would not have directed him to the bedroom. Due to the short sequential chain of events, the marijuana plants were discovered as a direct result of statements made by Dean without the benefit of *Miranda* with or without Dean's subsequent consent. A voluntary consent to search does not cure the prejudice directly flowing from an immediately-preceding *Miranda* violation.

{¶ 27} Furthermore, with this short sequential chain of events, I fail to see how *Elstad* is analogous to this case. *Elstad* applies to situations in which a *Miranda* violation occurs and a subsequent *Miranda* waiver is obtained. The issue in this case does not involve a subsequent *Miranda* waiver that might sever the link between any *Miranda* violation and the statements leading to the discovery of the marijuana plants. In any event, in order for a subsequent *Miranda* waiver to be valid, the waiver cannot be a part of "a single, unwarned sequence of questioning." *Missouri v. Seibert*, 542 U.S. 600, 124 S.Ct. 2601 (2004), fn. 4;

- 10 -

*Farris* at ¶ 21. Here, Officer Scott's questions as to whether there was "any more?" and "where?," constituted a single sequence of questioning leading directly to the request for consent to search.

{¶ 28} However, I agree with the conclusion of the majority that the marijuana plants discovered in the bedroom need not have been suppressed. Contrary to the direction of the majority opinion, I agree with, and would expound upon, the trial court's rationale. As the majority correctly points out, the appellate court must accept the trial court's findings of fact so long as they are supported by competent, credible evidence. *Jimenez*, 12th Dist. Warren No. CA2011-09-103, 2012-Ohio-3318, at ¶ 8. The testimony was adequate for the trial court to make findings, and as such, must be accepted as true for purposes of our analysis. *See State v. Graham*, 136 Ohio St.3d 125, 2013-Ohio-2114, ¶ 26.

{¶ 29} The trial court specifically did not suppress statements made by Dean prior to the discovery of the marijuana plants indicating that it did not find Dean to be subject to custodial interrogation at that point in time. The heart of the inquiry as to whether or not a suspect has been interrogated such that *Miranda* warnings are required focuses on whether or not the suspect has been the subject of police coercion and whether the individual has been compelled to speak by virtue of pressures from that coercion. *State v. Tucker*, 81 Ohio St.3d 431, 437 (1998). "In determining whether an individual was in custody, the court must examine the totality of the circumstances surrounding the interrogation." *Durham*, 12th Dist. Warren No. CA2013-03-023, 2013-Ohio-4764, at ¶ 17, citing *State v. Coleman*, 12th Dist. Butler No. CA2001-10-241, 2002-Ohio-2068, ¶ 23. Thus, it is necessary to determine the nature of the interrogation as well as the nature of custody in place. Both contribute to the totality of the circumstances that may result in an individual's response or the need to give *Miranda* warnings. A planned or designed questioning of a suspect is very different than a spur of the moment or spontaneous question produced by the unexpected observation of

contraband. *See Durham* at ¶ 24 ("routine on-the-scene questioning does not constitute 'custodial interrogation' requiring the recitation of *Miranda* warnings").

{¶ 30} *Miranda* warnings may be given as a safeguard to protect an individual's right to remain silent; however, *Miranda* warnings are not always necessary nor are they independent of the surrounding circumstances. *Miranda* warnings are not designed to protect a suspect from making statements, but rather are designed to protect a suspect from making statements *involuntarily*. Questioning within the confinement of an interview room in a police station is not automatically *custodial interrogation*. *See State v. Biros*, 78 Ohio St.3d 426, 440-442 (1997); *State v. Watts*, 12th Dist. Butler No. CA2005-08-364, 2007-Ohio-221. Similarly, questioning of an inmate while in the custody and care of the state is also not automatically *custodial interrogation* requiring *Miranda* warnings. *See State v. Porter*, 178 Ohio App.3d 304, 2008-Ohio-4627, ¶ 16 (2d Dist.); *State v. Simpson*, 10th Dist. Franklin No. 01AP-757, 2002-Ohio-3717, ¶ 34-35. One must look at the circumstances to determine what restrictions of liberty or restraint of freedom has taken place such that the circumstances are coercive and pressures flowing therefrom produced responses that were involuntary.

{¶ 31} In general, if a reasonable person in an individual's position would have believed that he or she was not free to leave given the totality of the circumstances, then it will be determined that the individual is in custody and any questioning is "custodial interrogation." *Berkemer v. McCarty*, 468 U.S. 420, 442, 104 S.Ct. 3138 (1984); *State v. Gumm*, 73 Ohio St.3d 413, 429 (1995). However, the restraint of freedom or "freedom to leave" analysis becomes inapplicable when the individual being questioned is already in custody for other reasons. *State v. Bradley*, 4th Dist. Scioto No. 1583, 1987 WL 17303, *8 (Sept. 22, 1987), citing *Cervantes v. Walker*, 589 F.2d 424 (9th Cir.1978); *United States v. Conley*, 779 F.2d 970 (4th Cir.1985); *United States v. Ozuna*, 170 F.3d 654 (6th Cir.1999). In instances where the individual is already in custody, courts have examined whether or not the

surroundings and circumstances resulted in additional restrictions on the freedom of movement or restraint of freedom. The context of this analysis is often when the individual is already a prisoner or in custody of the state; however, the same rationale is applicable to the facts before us. *See Simpson* at ¶ 34-35; *State v. Peeples*, 94 Ohio App.3d 34, 41-43 (4th Dist.1994); *State v. Farrell*, 2d Dist. Miami No. 99-CA-24, 1999 WL 812249, *4 (Oct. 8, 1999).[3]

**{¶ 32}** There is a vast difference between statements which are coerced by methods employed or intended to break a suspect's will and overcome the voluntariness of the suspect's desire not to respond and those incriminating statements which are freely given in response to an unwarned but noncoercive question. *Peeples* at 43. The officer's reaction to unexpectedly seeing drug paraphernalia was a reasonable and natural response, "is there more?"[4] We have recognized that general fact-gathering is not necessarily a part of custodial interrogation, saying, "'[g]eneral on-the-scene questioning as to facts surrounding a crime or other general questioning of citizens in the fact-finding process ordinarily does not fall within the ambit of custodial interrogation.'" *Durham*, 12th Dist. Warren No. CA2013-03-023, 2013-Ohio-4764, at ¶ 23, quoting *State v. Rivera-Carrillo*, 12th Dist. Butler No. CA2001-03-054, 2002 WL 371950, *3 (Mar. 11, 2002). Neither immediately before nor after this question, were there any words or actions that could in any way be construed as being additional intimidation, force, or pressure upon Dean to respond. The police were cooperative with Dean and she in turn was voluntarily cooperative with them.

**{¶ 33}** The initial arrest upon the menacing warrant was continuing in progress and did

---

3. While Dean was informed she was being placed under arrest outside her trailer and technically in custody, she certainly had the extended, unrestrained freedom to move about inside her trailer. Dean was not formally placed under arrest in a traditional sense.

4. Such observation would require a minimal, initial investigation which may reasonably include "what is this?"; "is this what I think it is?"; "is there more?" The officer did not attempt to obtain Dean's admission that the minor drug paraphernalia was hers.

not maintain restraint over Dean but actually gave Dean additional freedom of movement. Upon her request and with her consent, she was accompanied back inside her residence.[5] She was not handcuffed or in any way physically or psychologically pressured. Other than the initial custody for the menacing warrant, there was nothing restrictive or coercive in the circumstances subsequent to being served with the warrant.

{¶ 34} The officer's simple question "is there more?" was also not coercive, nor was there any evidence such question was employed to gain an incriminating response. After hearing the testimony, the trial court found, and I agree, there was nothing to suggest the officer was attempting to elicit an incriminating response. The officer may well have been hoping to put an end to his initial investigation of the minor contraband so that Dean could retrieve her shoes, leave the trailer, and the officer could eventually return to his daily duties. There are no facts to support any type of coercion or psychological pressure, which produced a custodial interrogation. Within these unusually unique and narrow facts, a "custodial interrogation" did not take place as determined by the trial court.

{¶ 35} Custodial interrogations by their very nature produce compelling pressures which work to undermine an individual's will to resist and compel him or her to speak where they otherwise would not do so freely. *Miranda*, 384 U.S. 436, 86 S.Ct. 1602. *Miranda* conceptualized the circumstances "'must reflect a measure of compulsion above and beyond that inherent in custody itself' before it will be considered a custodial interrogation." *Durham*, 12th Dist. Warren No. CA2013-03-023, 2013-Ohio-4764, at ¶ 16, quoting *State v. Brumley*, 12th Dist. Butler No. CA2004-05-114, 2005-Ohio-5768, ¶ 10. Serious questioning within the required confinement of an interview room at a police station is very different from the situation at hand, wherein Dean was walking about in her own home (looking for shoes) and

---

5. The majority opinion determines that before reentering the residence, Dean knew the officer would observe the minor marijuana paraphernalia. I was unable to locate support for such a finding in the record.

confronted with minor drug paraphernalia in plain view which in all likelihood could only result in a citation. The custodial interrogation protections associated with *Miranda* are not applicable. Thus, there was no Fifth Amendment claim arising from a *Miranda* violation immediately preceding Dean's voluntary consent to the search. Consequently, the trial court did not err in failing to suppress statements made by Dean or the marijuana plants discovered in the bedroom and I would adopt the trial court's rationale.