The STATE of Ohio, Appellee,

v.

BIRR, Appellant.

[Cite as State v. Birr, 192 Ohio App.3d 514, 2011-Ohio-796.]

Court of Appeals of Ohio,
Sixth District, Fulton County.

No. F–10–016.

Decided Feb. 18, 2011.

Scott A. Haselman, Fulton County Prosecuting Attorney, and T. Luke Jones, Assistant Prosecuting Attorney, for appellee.

Ted B. Riley, for appellant.

---

SINGER, Judge.

{¶ 1} Appellant, William L. Birr, appeals from his conviction in the Fulton County Court, Eastern District, on two counts. The first count was domestic violence, a violation of R.C. 2919.25(C) and a misdemeanor of the fourth degree. The second count was aggravated menacing, a violation of R.C. 2903.21 and a misdemeanor of the first degree. For the following reasons, we affirm.

{¶ 2} On February 26, 2010, William Birr was found guilty by a jury of domestic violence and aggravated menacing. Appellant now appeals, setting forth the following assignments of error:

{¶ 3} 1. "Defendant was deprived of effective assistance of Counsel. Counsel's performance in his representation of Defendant was so deficient as to deprive Defendant of his Sixth Amendment right to Counsel and such deficiency resulted in Defendant being convicted of both counts charged in the indictment."

{¶ 4} 2. "The jury's verdict was against the manifest weight of the evidence."

{¶ 5} At trial, appellant's wife, Diana Birr, testified that sometime in November 2008, she and appellant spent a day horseback riding. Mrs. Birr stated that on the drive home an argument between the couple ensued. Mrs. Birr testified that appellant became very upset and began to drive recklessly by speeding, running stop signs, and stopping on railroad tracks despite her emphatic demands that he stop driving in such a manner. Mrs. Birr testified that upon arriving home, appellant said he was going to kill the horses, and then he went inside the house while she took the horses from the trailer to the barn. Mrs. Birr testified that

when she came out of the barn, appellant came out of the house with a .45 caliber handgun and was walking toward the barn. Mrs. Birr testified that she told appellant to put the gun down and not to kill the horses, whereupon appellant turned toward Mrs. Birr and fired three shots into the ground near her feet. Mrs. Birr then stated that appellant entered the barn and fired two more shots and returned to the house. Mrs. Birr stated that she then went into the barn and found that the horses had not been shot. She testified that during the shooting she feared for her safety and that she believed that appellant came very close to killing her that day.

{¶ 6} Mrs. Birr testified that she initially told two of her friends about the incident and did not initially contact the authorities because she feared that appellant would try to kill her if she reported what happened. Mrs. Birr testified that she reported the incident to the Fulton County Sheriff's Department in March 2009. She said that she decided to come forward at that time because appellant had been incarcerated in February on an unrelated charge.

{¶ 7} On cross-examination, Mrs. Birr testified that at the time of the incident in November 2008 she and appellant were legally separated but still living together. She further testified that it was not until April 2009 that she contacted the Fulton County Sheriff's Department. She testified that she continued to live with appellant after the incident and to have sexual relations with him. She testified that she had graduated from the police academy, where she received firearms training with .45–caliber handguns and where she learned about civil protection orders and temporary protection orders, yet did not file for any protection order until April 2009, which was at or near the same time that she filed for divorce.

{¶ 8} On redirect, Mrs. Burr testified that appellant had a history of violence against her throughout the marriage, which caused her to fear that appellant would kill her if she reported the incident. Mrs. Birr testified that in April 2009 she finally felt that she could safely report the incident because appellant was having trouble making bond and she believed that he would be in jail for awhile.

{¶ 9} Aaron Gladieux, Fulton County Sheriff Deputy, testified that he responded to Mrs. Birr's complaint by going to her residence, where the alleged incident took place. He testified that upon arriving at the home, he met with Mrs. Birr who related to him the circumstances surrounding the November incident. Deputy Gladieux stated that Mrs. Birr showed him the area where the alleged shooting took place. He testified that while marking this area with the heel of his boot, he unearthed a spent round. He stated that he asked Mrs. Birr to retrieve the gun, which she did. He testified that he sent the bullet and the gun to the lab for testing. He testified that he used a metal detector to search the

entire area where the bullets allegedly struck the ground. He said that he was unable to find any other spent rounds.

{¶ 10} On cross-examination, Deputy Gladieux testified that the lab results matched the bullet with the gun; however, he did not bring the spent round with him to court. No one from the lab testified.

{¶ 11} We will address the second assignment of error first. Appellant assigns error to the jury's verdicts of conviction for domestic violence and aggravated menacing, arguing that both convictions are against the manifest weight of the evidence.

{¶ 12} In a manifest-weight-of-the-evidence challenge, the appellate court determines whether the "[w]eight of the evidence concerns 'the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other.'" (Emphasis omitted.) *State v. Thompkins* (1997), 78 Ohio St.3d 380, 387, 678 N.E.2d 541, quoting Black's Law Dictionary (6th Ed.1990) 1594. In making this determination, the court of appeals sits as a "thirteenth juror" and, after "'reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.'" Id., quoting *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 485 N.E.2d 717.

{¶ 13} The essential elements of the count pursuant to R.C. 2919.25(C), domestic violence, are as follows: "No person, by threat of force, shall knowingly cause a family or household member to believe that the offender will cause imminent physical harm to the family or household member."

{¶ 14} The essential elements of the second count, aggravated menacing, pursuant to R.C. 2903.21 are as follows: "No person shall knowingly cause another to believe that the offender will cause serious physical harm to the person or property of the other person, the other person's unborn, or a member of the other person's immediate family."

{¶ 15} Here, the jury heard testimony from Mrs. Birr that she and appellant had just had a heated argument when she confronted appellant with a demand to not carry through with his stated and apparent intention to kill the couple's horses. Mrs. Birr testified that appellant then turned toward her and fired three shots at her immediate vicinity. Mrs. Birr testified that appellant then entered the barn and, outside of her view, fired two more shots. The jury also heard testimony that Deputy Gladieux recovered a spent round in the

ground where Mrs. Birr alleged the shooting took place. Mrs. Birr also testified that she subjectively believed that appellant would physically harm her. Mrs. Birr testified that she was married to, and living with, appellant at the time of the alleged incident.

{¶ 16} In reviewing the entire record, we hold that the jury did not clearly lose its way or create a manifest miscarriage of justice by giving the witnesses credibility and by finding that all the elements of both counts were proven beyond a reasonable doubt. Accordingly, appellant's second assignment of error is not well taken.

{¶ 17} Appellant's first assignment of error alleges that appellant's trial counsel rendered ineffective assistance of counsel in two instances. First, appellant argues that his counsel was ineffective when he failed to file a motion to dismiss the case when the statutory time requirements for a speedy trial were violated. Second, appellant argues that his counsel was ineffective when he failed to call a certain witness, specifically appellant's original counsel. We will deal with each allegation in turn.

{¶ 18} In general, to prevail on a claim of ineffective assistance of counsel, appellant must show that counsel's conduct so undermined the proper functioning of the adversarial process that the trial court cannot be relied upon as having produced a just result. *Strickland v. Washington* (1984), 466 U.S. 668, 692–693, 104 S.Ct. 2052, 80 L.Ed.2d 674; *State v. McGuire*, 80 Ohio St.3d 390, 397, 686 N.E.2d 1112. This standard requires appellant to satisfy a two-prong test. First, appellant must show that counsel's representation fell below an objective standard of reasonableness. Second, appellant must show a reasonable probability that, but for counsel's perceived errors, the results of the proceeding would have been different. Id. at 687–688. This test is applied in the context of Ohio law that states that a properly licensed attorney is presumed competent. *State v. Hamblin* (1988), 37 Ohio St.3d 153, 155–156, 524 N.E.2d 476.

■ {¶ 19} Appellant alleges that his trial counsel was ineffective when he failed to require that the state bring appellant to trial within the time requirements of Ohio's speedy-trial statute. R.C. 2945.71(B)(1) states that a person must be brought to trial "[w]ithin [45] days after the person's arrest or the service of summons, if the offense charged is a misdemeanor of the third or fourth degree." R.C. 2945.71(B)(2) states that a person must be brought to trial "[w]ithin [90] days after the person's arrest or the service of summons, if the offense charged is a misdemeanor of the first or second degree." The accused or his counsel, however, may waive the constitutional and statutory right to a speedy trial if the waiver is made knowingly and voluntarily. *State v. O'Brien* (1987), 34 Ohio St.3d 7, 9, 516 N.E.2d 218; R.C. 2945.71 et seq.

{¶ 20} In this case, appellant was accused of two misdemeanors: one of the fourth degree and one of the first degree. Therefore, appellant had the right to be brought to trial within 90 days of his April 24, 2009 indictment. The trial did not occur until February 26, 2010, well after the 90–day deadline. Appellant contends that there is nothing in the record to indicate that his counsel did anything to toll the speedy-trial provisions.

{¶ 21} Whether the waiver was performed knowingly or voluntarily is not raised on this appeal, nor can it be. See *Worthington v. Ogilby* (1982), 8 Ohio App.3d 25, 27, 8 OBR 26, 455 N.E.2d 1022, holding that an "[a]ppellant cannot, for the first time, raise the issue of denial of a speedy trial [on appeal]." The only question for this court with regard to this assignment of error is whether the trial record contains a satisfactory record of waiver of appellant's right to a speedy trial.

{¶ 22} "[A] defendant's waiver of his or her right to a speedy trial must be either written or made on the record in open court." *State v. King* (1994), 70 Ohio St.3d 158, 160, 637 N.E.2d 903.

{¶ 23} Here, the record contains several written waivers of time signed by appellant's counsel. The first waiver was recorded on May 21, 2009, well within the 90–day deadline. We find that these journal entries constitute a satisfactory record of waiver by appellant, through counsel, of the time requirements for trial, a finding that contravenes appellant's assertion that the record contains no evidence of waiver of the time requirements. Therefore, trial counsel was not ineffective for failing to file a motion to dismiss the case for speedy-trial reasons.

{¶ 24} Second, appellant contends that his trial counsel was ineffective for failing to call a certain witness, specifically his original counsel. Prior to trial, appellant's original counsel filed a motion to withdraw from the case, citing the reason that appellant may call counsel as a witness. The motion was granted, although original counsel was never called as a witness.

{¶ 25} A defendant is not deprived of effective assistance of counsel when counsel chooses, for strategic reasons, not to pursue every possible trial tactic. *State v. Brown* (1988), 38 Ohio St.3d 305, 319, 528 N.E.2d 523. "[Trial] counsel's decision whether to call a witness falls within the rubric of trial strategy and will not be second-guessed by a reviewing court." *State v. Matthews*, 10th Dist. No. 03AP–140, 2003-Ohio-6307, 2003 WL 22784739, ¶ 31, quoting *State v. Treesh* (2001), 90 Ohio St.3d 460, 489, 739 N.E.2d 749. Accordingly, appellant's first assignment of error is not well taken.

{¶ 26} On consideration whereof, we find that appellant was not prejudiced or prevented from having a fair trial and the judgment of the Fulton County Court,

Eastern District, is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

OSOWIK, P.J., and HANDWORK, J., concur.