[Cite as *State v. Nelson*, 2016-Ohio-7115.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio                                            Court of Appeals No.  L-15-1190

        Appellee                                       Trial Court No.  CR0201402708

v.

Christopher D. Nelson                          **DECISION AND JUDGMENT**

        Appellant                                      Decided:  September 30, 2016

* * * * *

Julia R. Bates, Lucas County Prosecuting Attorney, and
David F. Cooper, Assistant Prosecuting Attorney, for appellee.

Lawrence A. Gold, for appellant.

* * * * *

**YARBROUGH, J.**

## I.  Introduction

{¶ 1}  Appellant, Christopher Nelson, appeals the judgment of the Lucas County

Court of Common Pleas, sentencing him to life in prison after a jury found him guilty of

one count of murder, two counts of felonious assault, and one count of participating in a criminal gang.  We affirm.

## A.  Facts and Procedural Background

{¶ 2}  In October 2014, appellant was indicted and charged with four felony offenses stemming from the gang-related shooting of Markiese Chandler and Josean Fleming that occurred in April 2010.  Chandler was killed in the shooting.  A third victim, Jovon Williams, fled the scene during the shooting and was not injured.

{¶ 3}  Witnesses to the shooting informed law enforcement personnel that three assailants approached a group of three men in an area in Toledo known to be occupied by members of the Beehive Crips gang.  However, the witnesses were unable to see the assailants' faces.  Consequently, authorities were initially unable to identify and prosecute those responsible.

{¶ 4}  Two days prior to the shooting, appellant was involved in an altercation outside of the Red and White store in Toledo.  At that time, appellant fired three shots at Ronald Ramsey with his .22 caliber Walther pistol, striking him once in the ankle.  Appellant was subsequently convicted of aggravated robbery with a firearms specification and was sentenced to a term of imprisonment for that offense.

{¶ 5}  While in prison on the aggravated robbery charge, appellant was caught with a knife on his person.  As a result, appellant was charged with possession of a deadly weapon under detention, a second degree felony.  In an effort to reduce the

2.

potential time he was facing on this charge or to reduce the time he was currently serving for his aggravated robbery conviction, appellant informed state troopers that he had information concerning the murder of Markiese Chandler and was willing to testify against Jimmy Henry and Byron Mitchell, the alleged perpetrators, in exchange for a deal.

{¶ 6} In an effort to ascertain the usefulness of appellant's information, Toledo police detectives Elizabeth Kantura, Robert Schroeder, and Deb Hahn traveled to the prison to meet with appellant on August 6, 2012. According to Kantura, the meeting took place in a small administrative room inside the prison. Appellant was handcuffed during the interview, which lasted less than 30 minutes.

{¶ 7} At the interview, appellant informed authorities that he was present at the scene of the murder. He went on to explain that he drove to the scene with Henry and Mitchell, parked the car, and approached the three victims who were walking along the side of the street. Appellant insisted that Henry was the first to fire shots. Appellant also admitted to firing shots, but stated that he was not aiming toward the victims and therefore was not the one responsible for the gunshot injuries. When pressed for further details, appellant was able to describe what he and the others were wearing, the type of vehicle they were driving, how they chased down one of the victims, and how they fled the scene. Up to this point, Kantura had not informed appellant of his *Miranda* rights. Kantura reasoned that she was not required to provide *Miranda* warnings because

3.

appellant voluntarily asked her to speak with him and she was skeptical as to the utility of the information appellant would provide. Further, Kantura stated that her purpose for interviewing appellant was merely to get his statement as a witness to the murder.

{¶ 8} After appellant provided the foregoing details to Kantura, Schroeder began questioning him concerning another homicide investigation. Prior to doing so, Schroeder informed appellant of his *Miranda* rights because appellant was a suspect in that case. The interview continued, and Kantura eventually returned to her questioning of appellant regarding the murder of Markiese Chandler. Appellant stated that he used a .22 caliber Walther pistol during the shooting.

{¶ 9} Three weeks after appellant was initially questioned, Kantura returned to the prison for a follow-up interview. Once again, Kantura did not read appellant his *Miranda* rights prior to questioning. According to her testimony, Kantura did not feel that it was necessary to inform appellant of his *Miranda* rights at this point because appellant was a witness, not a suspect, and she was merely gathering follow-up information from appellant concerning the vehicle that was used by the assailants.

{¶ 10} Almost two years later, on April 8, 2014, appellant again requested an interview with detectives regarding the murder of Markiese Chandler. This time, however, Schroeder had appellant transported to police headquarters for the interview. After informing appellant of his *Miranda* rights, which appellant waived, Schroeder questioned appellant regarding the murder.

4.

{¶ 11} Prompted by statements provided by appellant during the April 8, 2014 interview, detective Jay Gast conducted a follow-up interview with appellant on June 11, 2014. At that interview, which took place at police headquarters, appellant waived his *Miranda* rights and provided additional statements concerning the murder of Markiese Chandler.

{¶ 12} As a result of the statements provided to Toledo police, appellant was indicted on October 24, 2014, on one count of murder in violation of R.C. 2903.02(B) and R.C. 2929.02, an unspecified felony, two counts of felonious assault in violation of R.C. 2903.11(A)(2) and (D), felonies of the second degree, and one count of participating in a criminal gang in violation of R.C. 2923.42(A) and (B), a felony of the second degree. Firearms specifications were also attached to each of the four counts contained in the indictment.

{¶ 13} Following initial discovery, appellant filed a motion to suppress on February 13, 2015. In the motion, appellant sought the suppression of "any and all oral statements made by the Defendant that the State may seek to introduce at trial." After the parties briefed the motion, the trial court held a suppression hearing on April 10, 2015, at which the state called Kantura, Schroeder, and Gast to testify. At the conclusion of the hearing, the court took the matter under advisement. On May 4, 2015, the court issued its decision denying appellant's motion to suppress. In essence, the court found that appellant's statements were voluntarily given and were not the product of police

5.

coercion. Further, the court held that appellant's incarceration, standing alone, did not automatically require a finding that the detectives' questioning amounted to custodial interrogation. The court was careful to note that the questioning was precipitated by appellant's requests to speak to the police on more than one occasion.

{¶ 14} Following denial of appellant's motion to suppress, the matter proceeded to a jury trial, at which the state called several witnesses and appellant took the stand to testify in his own defense. At the conclusion of the trial, the jury found appellant guilty on all four counts contained in the indictment. At a subsequent sentencing hearing, appellant was ordered to serve a prison sentence of life with parole eligibility after 15 years for the murder count, 7 years each for one of the felonious assault counts and the count for participating in a criminal gang, and 6 years for the remaining felonious assault count. The court ordered the sentences served consecutively to one another and consecutive to a prison sentence appellant was serving on a prior offense.

{¶ 15} Following the trial court's imposition of sentence, appellant filed this timely appeal.

### B. Assignments of Error

{¶ 16} On appeal, appellant assigns the following errors for our review:

> I. The trial court erred to the prejudice of Appellant by denying his motion to suppress.

II.  Appellant received ineffective assistance of counsel in violation of his rights under the Sixth and Fourteenth Amendments to the United States Constitution and Article I, § 10 of the Constitution of the State of Ohio.

III.  The trial court erred in denying Appellant's Rule 29 Motion upon completion of the State's case in chief.

IV.  The jury's verdict was against the manifest weight of the evidence presented at trial.

## II.  Analysis

### A.  Motion to Suppress

{¶ 17} In his first assignment of error, appellant argues that the trial court erred in denying his motion to suppress.

{¶ 18} Appellate review of a trial court's ruling on a motion to suppress presents mixed questions of law and fact.  *State v. Burnside*, 100 Ohio St. 3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8.  "An appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence.  Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." (Citations omitted.)  *Id.*

{¶ 19} Here, appellant argues that his statements should be suppressed because they were the product of a custodial interrogation that took place without a waiver of his

*Miranda* rights. Appellant notes the fact that Schroeder informed him of his *Miranda* rights prior to questioning as support for his contention that he was in custody at the time and was therefore entitled to notification of his *Miranda* rights prior to Kantura's initial questioning. Appellant does not challenge the validity of the subsequent interviews, but insists that the statements he made during those interviews should be suppressed as fruits of the poisonous tree stemming from the alleged constitutional defects in Kantura's initial interrogation.

{¶ 20} "[A] defendant who is subjected to custodial interrogation must be advised of his or her *Miranda* rights and make a knowing and intelligent waiver of those rights before statements obtained during the interrogation will be admissible." *State v. Treesh*, 90 Ohio St.3d 460, 470, 739 N.E.2d 749 (2001). "Fidelity to the doctrine announced in *Miranda* requires that it be enforced strictly, but only in those types of situations in which the concerns that powered the decision are implicated." *Berkemer v. McCarty*, 468 U.S. 420, 437, 104 S.Ct. 3138, 82 L. Ed. 2d 317 (1984). "Voluntary confessions are not merely a proper element in law enforcement, they are an unmitigated good, essential to society's compelling interest in finding, convicting, and punishing those who violate the law." (Internal quotation marks and citations omitted). *Maryland v. Shatzer*, 559 U.S. 98, 108, 130 S.Ct. 1213, 175 L.Ed.2d 1045 (2010).

{¶ 21} The determination of whether police questioning of a prison inmate amounts to custodial interrogation was addressed by the United States Supreme Court in

8.

*Howes v. Fields*, --- U.S. ----, 132 S.Ct. 1181, 182 L.Ed.2d 17 (2012). In *Howes*, the defendant was escorted from his prison cell by a corrections officer to a conference room where he was questioned by two sheriff's deputies about criminal activity that he had allegedly engaged in before he entered prison. At no time during the questioning was the defendant given *Miranda* warnings or advised that he did not have to speak with the deputies. However, defendant was told more than once that he was free to leave the interview and return to his cell. The questioning lasted between five and seven hours, during which time the defendant was free of restraints and the door to the conference room was occasionally open. While the defendant stated that he no longer wished to speak to the deputies several times during the interview, he never stated that he wished to return to his cell. According to the defendant, one of the deputies used a "very sharp tone" during the interview. At some point during the interview, the defendant confessed and the interview concluded. The defendant was escorted back to his cell 20 minutes later, after his normal bedtime. *Id.* at 1192-93.

{¶ 22} In examining whether the defendant was in custody and entitled to be apprised of his *Miranda* rights prior to questioning, the court stated: "'custody' is a term of art that specifies circumstances that are thought generally to present a serious danger of coercion." *Id.* at 1189. "In determining whether a person is in custody in this sense, the initial step is to ascertain whether, in light of the objective circumstances of the interrogation, a reasonable person [would] have felt he or she was not at liberty to

terminate the interrogation and leave." (Internal quotations and citation omitted.) *Id.* In evaluating whether an inmate would have felt free to leave, a court must consider the totality of the circumstances. In so doing, the court should be mindful of the following relevant factors: (1) the location of the questioning, (2) its duration, (3) statements made during the interview, (4) the presence or absence of physical restraints during the questioning, and (5) the release of the interviewee at the end of the questioning. *Id.* Freedom of movement, standing alone, is not a determinative factor. Indeed, the *Howes* court cautioned courts to consider "whether the relevant environment presents the same inherently coercive pressures as the type of station house questioning at issue in *Miranda*." *Id.* at 1189-90.

{¶ 23} After articulating the foregoing principles, the court in *Howes* found that "imprisonment alone is not enough to create a custodial situation within the meaning of *Miranda*." *Id.* at 1190. In so finding, the court reasoned that interrogation of a prison inmate is different from the type of interrogation that was at issue in *Miranda* for at least three reasons: (1) "questioning a person who is already serving a prison term does not generally involve the shock that very often accompanies arrest," (2) "a prisoner, unlike a person who has not been sentenced to a term of incarceration, is unlikely to be lured into speaking by a longing for prompt release," and (3) "a prisoner, unlike a person who has not been convicted and sentenced, knows that the law enforcement officers who question him probably lack the authority to affect the duration of his sentence." *Id.* at 1190-91.

10.

{¶ 24} In summarizing the test to be applied in cases in which a prison is questioned, the court stated that "the determination of custody should focus on all of the features of the interrogation * * * includ[ing] the language that is used in summoning the prisoner to the interview and the manner in which the interrogation is conducted." *Id.* at 1192. Considering all of the circumstances of the questioning, the court found that the defendant was not in custody within the meaning of *Miranda. Id.* The court found it particularly noteworthy that the defendant was told he was free to end the questioning and return to his cell. *Id.* at 1193.

{¶ 25} Likewise, we find that appellant was not in custody for purposes of *Miranda* in this case. Notably, appellant in this case actually *invited* Kantura to the prison to speak with him regarding his involvement in this case. He was transferred to an administrative room within the prison, where the initial questioning lasted less than 30 minutes. While it is true that appellant was handcuffed during the interview, this fact would not have alarmed appellant, who was accustomed to life as a prison inmate and the restraints that are routinely employed within prisons. *State v. Platt*, 12th Dist. Warren No. CA2013-12-116, 2014-Ohio-3450, ¶ 23. Moreover, there is no evidence that appellant attempted to stop the interview or resist questioning at any point during the process. Rather, appellant freely volunteered the information he provided to Kantura with the hope that providing such information would allow him to receive a reduction in his prison sentence.

11.

{¶ 26} Upon consideration of the totality of circumstances present in this case, and in light of the fact that Kantura's interview took place at appellant's request, we find that a reasonable person in appellant's position would have felt free to terminate the interrogation and return to his cell. Further, we find that the circumstances surrounding the interrogation do not present the same inherently coercive pressures as the type of station house questioning at issue in *Miranda*. In that regard, we agree with the trial court's statement that "there are no facts or even argument to indicate any coercion by police." Thus, we conclude that appellant was not in custody within the meaning of *Miranda*, and was therefore not entitled to *Miranda* warnings prior to police questioning.

{¶ 27} Accordingly, appellant's first assignment of error is not well-taken.

## B. Ineffective Assistance of Counsel

{¶ 28} In his second assignment of error, appellant argues that he was deprived of effective assistance of trial counsel.

{¶ 29} The Ohio Supreme Court has explained the constitutional right to effective assistance of counsel as follows: "Counsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance." *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraph two of the syllabus, citing *State v. Lytle*, 48 Ohio St.2d 391, 358 N.E.2d 623 (1976); *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

12.

**{¶ 30}** The court must defer to the strong presumption that counsel's performance falls within the wide range of reasonable professional performance. *Bradley* at 142. Even if counsel's performance falls outside the objective standard of reasonable representation, the court will not reverse unless counsel's ineffectiveness resulted in prejudice. *Id.* In order to show prejudice warranting reversal, the defendant must show that there is a reasonable probability that, but for counsel's ineffectiveness, the outcome of the proceeding would have been different. *Id.*, quoting *Strickland* at 694.

**{¶ 31}** Here, appellant asserts that his trial counsel was ineffective for failing to thoroughly investigate the case, failing to retain or consult with a ballistics expert, and failing to retain a psychological expert specializing in the field of false confessions.

**{¶ 32}** In support of his assertion that counsel did not thoroughly prepare for the case, appellant notes that only one defense witness was called at trial excluding appellant. Appellant takes issue with this fact because defense counsel's witness list contained 62 names.

**{¶ 33}** We have previously stated that "[a] defendant is not deprived of effective assistance of counsel when counsel chooses, for strategic reasons, not to pursue every possible trial tactic." *State v. Birr*, 192 Ohio App.3d 514, 520, 2011-Ohio-796, 949 N.E.2d 589 (6th Dist.), citing *State v. Brown*, 38 Ohio St.3d 305, 319, 528 N.E.2d 523 (1988). "'[Trial] counsel's decision whether to call a witness falls within the rubric of trial strategy and will not be second-guessed by a reviewing court.'" *State v. Treesh*, 90

13.

Ohio St.3d 460, 489, 739 N.E.2d 749 (2001). In light of the extensive witness list that was compiled by defense counsel, we find that counsel's decision not to call more defense witnesses was a tactical one. Further, it is worth noting that appellant has failed to even allege the existence of any exculpatory evidence that would have been introduced by further witnesses. Thus, we find that counsel was not ineffective for failing to call more defense witnesses.

{¶ 34} Turning to appellant's argument concerning the ballistics expert, we once again find that trial counsel's decision not to retain such a witness falls within the ambit of trial tactics. Further, appellant fails to indicate how the result of the proceedings would have been different had defense counsel retained a ballistics expert. Appellant asserts that defense counsel "acknowledged at side bar that she had not prepared for or made inquiries of the state's ballistics expert." However, our review of the record reveals otherwise. The portion of the trial transcript to which appellant cites establishes that defense counsel was familiar with the ballistic expert's report. Indeed, the side bar was prompted by counsel's concern that the expert was testifying to matters outside the scope of the expert's report regarding the brand of firearm potentially used in the shooting. Thus, we find no merit to appellant's ineffective assistance argument concerning counsel's failure to retain or consult with a ballistics expert.

{¶ 35} Finally, appellant argues that counsel's failure to retain a psychological expert specializing in the field of false confessions amounted to ineffective assistance.

14.

Appellant's theory at trial, as indicated by his own testimony, was that he fabricated his statements to the police in an effort to strike a deal to lessen the severity of his prison sentence. Appellant speculates that an expert in false confessions would have testified as to the false nature of his statements and persuaded the jury to exonerate him. We find no merit to appellant's speculation. As noted by the state, there was no attempt by police to pressure appellant into making the statements he made during several interviews with authorities. Further, the statements were consistent throughout the interviews and included details of the shooting that only someone who was present on the scene would know. Given these facts, we find that a false confession expert would have had no impact on the outcome of this case. Further, we find that counsel's decision not to retain such an expert was a strategic decision and did not give rise to a claim for ineffective assistance of counsel.

{¶ 36} Having found no merit to the foregoing arguments concerning ineffective assistance of counsel, appellant's second assignment of error is not well-taken.

### C. Crim.R. 29 Motion

{¶ 37} In his third assignment of error, appellant argues that the trial court erred in denying his Crim.R. 29 motion at the close of the state's case-in-chief.

{¶ 38} We review a ruling on a Crim.R. 29 motion for acquittal under the same standard used to determine whether there was sufficient evidence to sustain a conviction. *State v. Merritt*, 6th Dist. Fulton No. F-12-009, 2013-Ohio-4834, ¶ 8. Crim.R. 29

15.

provides that upon a defendant's motion or the court's own motion, after the evidence of either side is closed, the court shall order entry of judgment of acquittal if the evidence is insufficient to sustain a conviction of the charged offense.

{¶ 39} "A sufficiency of the evidence argument challenges whether the State has presented adequate evidence on each element of the offense to allow the case to go to the jury or to sustain the verdict as a matter of law." *State v. Shaw*, 2d Dist. Montgomery No. 21880, 2008-Ohio-1317, ¶ 28, citing *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). During a sufficiency of the evidence review, an appellate court's function is to "examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus, *superseded by state constitutional amendment on other grounds as stated in State v. Smith*, 80 Ohio St.3d 89, 684 N.E.2d 668 (1997). "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Jenks* at paragraph two of the syllabus.

{¶ 40} Here, appellant asserts that the state "did not prove all elements of Count 4: Participating in a criminal gang * * * or all of the elements of a felonious assault as it relates to victim, Jovan Williams." The elements of participating in a criminal gang are set forth in R.C. 2923.42, which states, in relevant part:

16.

(A) No person who actively participates in a criminal gang, with knowledge that the criminal gang engages in or has engaged in a pattern of criminal gang activity, shall purposely promote, further, or assist any criminal conduct, as defined in division (C) of section 2923.41 of the Revised Code, or shall purposely commit or engage in any act that constitutes criminal conduct, as defined in division (C) of section 2923.41 of the Revised Code.

(B) Whoever violates this section is guilty of participating in a criminal gang, a felony of the second degree.

Further, "criminal conduct" is defined under R.C. 2923.41 as the commission of, an attempt to commit, a conspiracy to commit, complicity in the commission of, or solicitation, coercion, or intimidation of another to commit, attempt to commit, conspire to commit, or be in complicity in the commission of (1) a felony, (2) an offense of violence, or (3) a violation of section R.C. 2907.04, 2909.06, 2911.211, 2917.04, 2919.23, 2919.24, 2921.04, 2923.16, 2927.12, or 2925.03 if the offense is trafficking in marihuana.

{¶ 41} In this case, the state introduced significant evidence at trial of appellant's involvement in the Little Head Bloods gang. According to testimony from William Noon, a detective with the Toledo gang task force, the Little Head Bloods gang has been involved in the commission of numerous felonies including felonious assault, drug

trafficking, robbery, and aggravated robbery. Additionally, detectives who interviewed appellant indicated that appellant acknowledged his participation in the gang. Several video recordings of such interviews were published at trial. In these recordings, appellant admits that he is affiliated with the Little Head Bloods and also implicates Henry and Mitchell as members of the gang.

{¶ 42} In addition to the foregoing, the record demonstrates appellant participated in the shooting of Chandler and Fleming in retaliation for a drive-by shooting that was believed to have been carried out by members of the Beehive Crips gang, a rival of the Little Head Bloods. During that shooting, appellant was struck by pellets fired at him. Further, appellant was involved in an altercation with a rival gang member just days prior to the shooting at issue here. In that incident, appellant shot the rival gang member in the ankle with his .22 caliber Walther pistol.

{¶ 43} Construing the foregoing in a light most favorable to the prosecution, we find that the state's evidence was sufficient to establish the elements of participating in a criminal gang as set forth in R.C. 2923.42.

{¶ 44} Turning to appellant's argument concerning the felonious assault charge, R.C. 2903.11 provides, in relevant part:

> (A) No person shall knowingly do either of the following:
>
> * * *

(2) Cause or attempt to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance.

{¶ 45} Regarding appellant's sufficiency argument surrounding the felonious assault charge, we find Jovon Williams' trial testimony illuminative. When asked to describe the events that transpired on the day of the shooting, Williams indicated that he was walking down the street with Chandler and Fleming when they were approached by men in dark clothes who started opening fire on them. In his statements to the police, appellant acknowledged that he was one of the men who shot at Chandler, Fleming, and Williams. Evidence showing that appellant discharged a firearm toward Williams is sufficient to establish appellant's attempt to cause physical harm to Williams. Further, it is beyond dispute that a .22 caliber Walther pistol is a deadly weapon. Consequently, we find that the state introduced sufficient evidence to establish the elements of felonious assault relating to appellant's attempted shooting of Williams.

{¶ 46} Accordingly, appellant's third assignment of error is not well-taken.

### D. Manifest Weight of the Evidence

{¶ 47} In his final assignment of error, appellant argues that the jury's verdict was against the manifest weight of the evidence. When reviewing a manifest weight claim,

The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way

and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 48} "The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *Id.* It has been long held that the weight to be given to the evidence and the credibility of the witnesses is primarily for the trier of fact to decide. *State v. Thomas*, 70 Ohio St.2d 79, 79-80, 434 N.E.2d 1356 (1982). The standard of review is therefore high, and the trial court, with its unique position to resolve the factual issues, enjoys significant deference to determine the credibility of witnesses. *State v. Mills*, 62 Ohio St.3d 357, 367, 582 N.E.2d 972 (1992).

{¶ 49} Appellant argues that the verdict in this case was against the manifest weight of the evidence because "no credible evidence found at the scene links [him] to the charged offenses." In particular, appellant takes issue with the fact that no .22 caliber shell casings or live rounds were found at the crime scene, which allegedly casts doubt on the truthfulness of his statements to police that he was involved in the shooting.

{¶ 50} Despite the absence of any spent .22 caliber shell casings at the crime scene, the coroner that performed the autopsy on Chandler testified that Chandler died as a result of a .22 caliber gunshot wound to the head. In his statements to the police, appellant admitted to using a .22 caliber Walther pistol during the shooting. This same

20.

pistol was used by appellant in another shooting that occurred two days prior to the shooting at issue here.

{¶ 51} Regarding the absence of shell casings at the crime scene, an officer with the scientific investigations unit, Chad Culpert, testified that shell casings are not always found at crime scenes. Culpert explained that shell casings may not be found for "any number of reasons." Specifically, Culpert stated that shell casings would not be found if the assailant used a revolver, because a revolver does not expel the casing when it is fired. Additionally, Culpert recounted "numerous cases" where he found shell casings stuck into the bottom of boots worn by first responders or the tire tread of fire trucks or police cruisers. In sum, Culpert stated that "there is too much intervention before we get there and even a lot of times before the officers get there. You have multiple medical traffic, foot traffic, people running everywhere. It's not uncommon at all not to find shell casings."

{¶ 52} In light of Culpert's uncontroverted testimony, we find that the absence of .22 caliber shell casings at the crime scene does not automatically lead to a conclusion that appellant was not involved in the April 2010 shooting. Rather, appellant's statements to police, in which he consistently acknowledged participation in the April 2010 shooting and provided details concerning said shooting, lead us to conclude that the jury's verdict was not against the manifest weight of the evidence. By extension, we find

that appellant's claim that he fabricated his statements to the police in order to lessen his preexisting prison sentence to be untenable.

{¶ 53} Accordingly, appellant's fourth assignment of error is not well-taken.

### III. Conclusion

{¶ 54} The judgment of the Lucas County Court of Common Pleas is affirmed. Costs are hereby assessed to appellant in accordance with App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.          _____
                                                    JUDGE
Thomas J. Osowik, J.

                                  _____
Stephen A. Yarbrough, J.                            JUDGE
CONCUR.

                                  _____
                                                    JUDGE