[Cite as *State v. Wash*, 2020-Ohio-152.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

PREBLE COUNTY


STATE OF OHIO,                       :

       Appellee,               :             CASE NO. CA2019-02-002

                                       :             O P I N I O N

    - vs -                           1/21/2020

                                       :

TRAIZE T. WASH,             :

       Appellant.             :


CRIMINAL APPEAL FROM PREBLE COUNTY COURT OF COMMON PLEAS
Case No. 18CR12544


Martin P. Votel, Preble County Prosecuting Attorney, Gractia S. Manning, 101 East Main Street, Courthouse, First Floor, Eaton, Ohio 45320, for appellee

Muechenbach Law Office, LLC, Brian A. Muenchenbach, 309 N. Barron Street, Eaton, Ohio 45320, for appellant


**PIPER, J.**

{¶ 1} Appellant, Traize Wash, appeals his convictions in the Preble County Court of Common Pleas for crimes related to his possession of drugs and a weapon.

{¶ 2} A canine handler with the Ohio State Highway Patrol was patrolling eastbound traffic on Interstate 70 when he observed a driver pass his stationary location. The driver made an exaggerated movement by rubbing his face from his forehead to his chin, in what

the trooper believed was a nervous attempt to avoid being seen. The trooper then observed the vehicle slow and change lanes immediately after passing the trooper. The trooper began following the vehicle, and a registration check indicated that the vehicle was rented. However, the trooper observed that the vehicle did not display a barcode sticker on its side, which is customarily used in the rental car industry for logistic purposes.

{¶ 3} The trooper passed the vehicle and then pulled onto a crossover. After the vehicle passed his location, the trooper followed the vehicle again. The trooper observed the driver, later identified as Wash, committing two traffic violations. Wash switched lanes without a proper signal and then drove on and over the solid yellow edge line of the left lane while passing another vehicle. The trooper initiated a traffic stop of Wash's vehicle based on his observations of the traffic violations.

{¶ 4} The trooper made contact with Wash, who was unable to produce a rental agreement. The trooper explained the reasons for the traffic stop, including the marked lane violation, and Wash admitted that he was "taught to go way left" when passing. Once Wash was unable to provide a rental agreement, the trooper asked Wash to exit the vehicle and sit in the back of his cruiser until the rental could be verified. However, Wash refused to sit in the cruiser, and instead, stood in front of it. The trooper then called for backup and attempted to verify the rental.

{¶ 5} After the rental car company told the trooper that Wash's name was not on the rental agreement, and after backup arrived, the trooper walked his canine partner around the vehicle. The canine alerted to the presence of narcotics. When the trooper instructed Wash to sit in the back of his cruiser, Wash told the trooper that police would locate drugs and a gun in the vehicle. The trooper informed Wash of his *Miranda* rights, and Wash told the trooper to "take me to jail."

{¶ 6} As a result of the search, troopers located cocaine, methamphetamine, drug paraphernalia, and a gun in the vehicle. Wash was later indicted for possession of cocaine, aggravated possession of drugs, having weapons under disability, carrying a concealed weapon, improper handling of a firearm in a vehicle, possessing criminal tools, and illegal use or possession of drug paraphernalia. Wash pled not guilty to the charges and filed a motion to suppress, claiming that the stop and search were unconstitutional. The trial court held a hearing and later denied Wash's motion to suppress.

{¶ 7} After Wash substituted counsel, he pled no contest to the first six counts of the indictment. The state then dismissed the seventh count. The trial court found Wash guilty of the six charges and sentenced him to five years in prison. Wash now appeals his convictions, raising the following assignments of error.

{¶ 8} Assignment of Error No. 1:

{¶ 9} THE TRIAL COURT, IN DENYING APPELLANT'S MOTION TO SUPPRESS, ERRED TO THE PREJUDICE OF APPELLANT BECAUSE THE TRAFFIC STOP WAS UNCONSTITUTIONAL AND THE ALLEGED TRAFFIC VIOLATIONS, IF THEY OCCURRED, WOULD NOT HAVE OCCURRED BUT FOR THE OVERLY AGGRESSIVE PURSUIT TACTICS OF THE ARRESTING OFFICER.

{¶ 10} Wash argues in his first assignment of error that the trial court erred in denying his motion to suppress.

{¶ 11} Appellate review of a ruling on a motion to suppress presents a mixed question of law and fact. *State v. Gray*, 12th Dist. Butler No. CA2011-09-176, 2012-Ohio-4769, ¶ 15. When considering a motion to suppress, the trial court, as the trier of fact, is in the best position to weigh the evidence to resolve factual questions and evaluate witness credibility. *State v. Vaughn*, 12th Dist. Fayette No. CA2014-05-012, 2015-Ohio-828, ¶ 8.

{¶ 12} When reviewing the denial of a motion to suppress, this court is bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Durham*, 12th Dist. Warren No. CA2013-03-023, 2013-Ohio-4764, ¶ 14. "An appellate court, however, independently reviews the trial court's legal conclusions based on those facts and determines, without deference to the trial court's decision, whether as a matter of law, the facts satisfy the appropriate legal standard." *State v. Cochran*, 12th Dist. Preble No. CA2006-10-023, 2007-Ohio-3353, ¶ 12.

{¶ 13} The Fourth Amendment to the United States Constitution and Section 14, Article I of the Ohio Constitution prohibit unreasonable searches and seizures, including unreasonable automobile stops. *Bowling Green v. Godwin*, 110 Ohio St.3d 58, 2006-Ohio-3563, ¶ 11. Where a police officer stops a vehicle based on probable cause that a traffic violation has occurred or was occurring, the stop is reasonable. *State v. Graham*, 12th Dist. Warren No. CA2008-07-095, 2009-Ohio-2814.

{¶ 14} When a law enforcement officer initiates a valid traffic stop, the officer may detain the motorist for a period of time sufficient to issue the motorist a citation and to perform routine procedures such as a computer check on the motorist's license, registration, and vehicle plates. *State v. Grenoble*, 12th Dist. Preble No. CA2010-09-011, 2011-Ohio-2343, ¶ 28. The continued detention remains legal if based on "articulable facts giving rise to a suspicion of some illegal activity justifying an extension of the detention." *State v. Robinette*, 80 Ohio St.3d 234, 240 (1997).

{¶ 15} If the circumstances give rise to a reasonable suspicion of some other illegal activity, different than that which triggered the stop, then the officer may detain the driver for as long as the new articulable reasonable suspicion exists. *State v. Casey*, 12th Dist. Warren No. CA2013-10-090, 2014-Ohio-2586. The existence of reasonable and articulable suspicion is determined by evaluating the totality of the circumstances "through the eyes of

the reasonable and prudent police officer on the scene who must react to events as they unfold." *State v. Popp*, 12th Dist. Butler No. CA2010-05-128, 2011-Ohio-791, ¶ 13.

{¶ 16} Further, the automobile exception to the warrant requirement of the Fourth Amendment provides that law enforcement officers may search a motor vehicle without a warrant if the officers have probable cause to believe the vehicle contains contraband. *State v. Lynn*, 12th Dist. Butler Nos. CA2017-08-129 and CA2017-08-132, 2018-Ohio-3335. Probable cause in these instances is "a belief reasonably arising out of circumstances known to the seizing officer, that an automobile or other vehicle contains that which by law is subject to seizure and destruction." *Popp* at ¶ 27. The determination of probable cause is fact-dependent and turns on what the officers knew at the time they conducted the search. *Godwin*, 2006-Ohio-3563.

{¶ 17} After reviewing the record, we find that the trial court did not err in denying Wash's motion to suppress. Notwithstanding the exaggerated gesture Wash made when he first saw the trooper and his suspicious behavior once the trooper began following him, the trooper directly observed Wash commit two separate traffic violations. The trial court found the trooper's testimony regarding the violations credible and made an express finding that the trooper "did, in fact, observe" Wash's traffic violations. The record does not provide us with a basis to second-guess the trial court on this credibility determination.

{¶ 18} Specifically, the trooper observed a marked lane violation when Wash crossed over the outside yellow line when attempting to pass another vehicle in violation of R.C. 4511.33, which requires a driver to drive his or her vehicle entirely within a single lane of traffic. The trooper also observed a turn signal violation according to R.C. 4511.39 when Wash began changing lanes without signaling his intention to do so 100 feet before his lane change. These two traffic violations provided probable cause for the trooper to initiate a valid traffic stop.

{¶ 19} Once the traffic stop occurred, the trooper began investigating the reason for the stop and within the time necessary to effectuate that investigation began to walk his canine partner around the vehicle. Once the canine alerted to the presence of drugs, the trooper had probable cause to search the inside of the vehicle. This is especially true once Wash volunteered that the troopers would find drugs and a gun inside the car.

{¶ 20} Despite well-settled law that police observation of a traffic violation permits a valid traffic stop, Wash argues that he would not have committed any alleged traffic violations had the trooper not engaged in "hounding and vehicular harassment." Wash asks this court to "send a message to police officers that they cannot be allowed to create a traffic patrol situation which encourages or facilitates the commission of a nervous mistake to justify a traffic stop." However, the record indicates that Wash did not just have a nervous reaction, but rather, violated two specific traffic laws. We need not address in detail Wash's hypothetical suggestion that his traffic violations would not have occurred had the trooper not been following and watching him. Drivers are bound by Ohio's traffic laws regardless of police presence, and we decline Wash's request to hold otherwise.[1]

{¶ 21} After reviewing the record, we find that the trooper's stop was valid at its inception and remained valid during the canine sniff and subsequent investigation of possible drug-related offenses. As such, the trial court properly denied Wash's motion to suppress and his first assignment of error is overruled.

{¶ 22} Assignment of Error No. 2:

{¶ 23} APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF HIS RIGHT TO COUNSEL AS GUARANTEED BY THE SIXTH AMENDMENT TO THE CONSTITUTION OF THE UNITED STATES OF AMERICA.

---

1. We would acknowledge that some drivers experience anxiety and become nervous at the presence of law enforcement, yet such reactions on a driver's part, while regrettable and unpleasant, simply do not excuse traffic violations.

{¶ 24} Wash argues in his second assignment of error that he did not receive effective assistance of counsel.

{¶ 25} To prevail on an ineffective assistance of counsel claim, an appellant must show his trial counsel's performance was deficient, and that he was prejudiced as a result. *Strickland v. Washington*, 466 U.S. 668, 687-688, 104 S.Ct. 2052 (1984). Trial counsel's performance will not be deemed deficient unless it fell below an objective standard of reasonableness. *Id.* at 688. To show prejudice, appellant must establish that, but for his trial counsel's errors, there is a reasonable probability that the result of his trial would have been different. *Id.* at 694.

{¶ 26} Wash argues that he was denied effective assistance when trial counsel failed to question the canine's training and reliability as part of the motion to suppress. Wash asserts that he suffered prejudice because the state did not offer evidence of the canine's training or reliability at the suppression hearing and that the only testimony regarding the canine was the trooper's testimony regarding the canine's alert. We disagree.

{¶ 27} The record does not demonstrate any reasonable possibility that had Wash's trial counsel challenged the canine's training or reliability that the trial court would have granted his motion to suppress. The trooper testified about using his canine partner, and how he knew that his partner was alerting to the presence of drugs. Nothing within the trooper's testimony raised any doubt regarding the canine's ability to detect the presence of drugs. Moreover, and even if the canine's abilities had been challenged, the suggestion that the canine's alert to the presence of drugs was somehow deficient is speculative at best. Wash does not deny that he voluntarily told the trooper that police would locate drugs and a gun in his vehicle. We decline the invitation to imagine a prejudice where there is none.

{¶ 28} After reviewing the record, Wash has failed to demonstrate that the results of his motion to suppress would have been different had his trial counsel challenged the

canine's training and reliability. As such, Wash was not denied effective assistance of counsel and his second assignment of error is overruled.

{¶ 29} Judgment affirmed.

RINGLAND, P.J., and M. POWELL, J., concur.